The President and Trustees of the Town of St. Charles v. O'Mailey.

THE PRESIDENT AND TRUSTEES OF THE TOWN OF ST. CHARLES, Appellant, *v.* PETER O'MAILEY, Appellee.

APPEAL FROM KANE.

Where the charter of a town requires its officers to keep a record of the by-laws, etc., which shall be received in all courts as evidence, other proof than such record is unnecessary; and an honest correction of the record does not vitiate the by-laws.

If the charter authorizes the recovery of several fines in one action, if the proof is clear as to four distinct offenses, a verdict for the penalty of but one is improper, as it would be a bar to a future prosecution for the other penalties.

A witness is not to be discredited from the simple fact that he may fill the character of an informer or spy.

Where a statute expressly gives costs to a successful party, it is erroneous to divide them.

THIS was a suit commenced before a justice of the peace by the town officers of St. Charles, for the violation of an ordinance prohibiting the sale of liquors, for a failure to pay penalties, a certain sum, not exceeding one hundred dollars.

A judgment was rendered before the justice against defendant for one hundred dollars debt, and costs of suit. The defendant appealed to the circuit court. At May term, 1856, of the Kane Circuit Court, the cause was tried on the appeal, before I. G. WILSON, Judge, and a jury.

A witness was sworn, who testified that O'Mailey had sold him two drinks of brandy at his grocery, in St. Charles, at two different times, on the 29th of November, 1855, and also a pint of whisky to another person, on the same day. On his cross examination, this witness stated that he resided at Batavia; went to St. Charles for the purpose of buying liquor, that the defendant might be prosecuted; I drank twice on that evening at defendant's; went to several other groceries and saloons on same evening; drank five or six times in all that evening. *Question.* State whether you are a member of a temperance society, and pledged not to use intoxicating drinks? Did you not go to St. Charles to buy liquor of defendant at the suggestion or request of an organized band or society of men at Batavia, or by a resolution of such a band? *Answer.* Well, I hardly know whether I can answer the question. There was no resolution passed; others knew I was going; it was spoken of by others; I expected to have my expenses paid. *Question.* State whether or not you are a member of a society sworn to prosecute liquor sellers, and to destroy their property? *Answer.* Don't know as any one offered to defray my expenses; had some expectation that they would be paid; I paid for team and liquor; no one furnished me any money.

Another witness stated that he went to St. Charles for the purpose of purchasing liquor of the defendant, that he might be prosecuted.

Rolla French, sworn: I am the corporation clerk of the town of St. Charles. These (referring to the book of records offered in evidence) are the records of the corporation of the town of St. Charles. These ordinances and certificates (referring to the ordinances and certificates of publication upon which suit is brought) are in the hand-writing of A. R. McWayne. He was, at the date of said ordinances, the clerk of said corporation.

A. R. McWayne, sworn: Know defendant; resides at St. Charles. (Plaintiff's counsel gave book of records, purporting to be the records of the corporation of the town of St. Charles, to witness.) By plaintiff's counsel: Please to state whether or not these are the records of the corporation of the town of St. Charles? *Answer.* They are. Please to turn to the ordinances passed by the president and trustees of the town of St. Charles, June 15th, 1854, and the certificate of posting such ordinances, in relation to the sale of intoxicating drinks, and state whose hand-writing they are in? (Witness opened book to ordinance and certificate, and examined them.) *Ans.* They are in my hand-writing; I was corporation clerk at the time. *Question.* State whether you caused such copies of

The President and Trustees of the Town of St. Charles v. O'Mailey.

those ordinances to be made? *Answer.* I did. *Question.* Did you cause such copies to be posted up; if so, where? *Answer.* I *had* made fifteen or twenty copies. I posted up one on the mill, on the west side of Fox river, in St. Charles; one on post in mill, on the east side of the river. I posted two or three copies on the bridge across Fox river; one in my office, and one at the post office; others in different parts of the town. They were posted on the 24th day of June, A. D. 1854. The words "of the most" were added in the record book at the request and by the direction of the president and trustees of the town of St. Charles.

The book of records of the corporation was then allowed to go to the jury as *evidence,* containing *ordinance* and *certificate* above set out. The above was all the testimony in the above case.

PLAINTIFF'S INSTRUCTIONS. That the book purporting to be the records of the corporation of the town of St. Charles is proper evidence in this case of *all* matters therein contained.

That what are the *three* most public places in the town of St. Charles is a question of fact for the jury to determine; and if they believe the proper notices were duly posted in three public places of resort, such as the flouring mills, on the east and west sides of the river in said town, and at the post office, such is proper evidence on the question of posting notices.

That the minutes and entries made by A. R. McWayne, while in the proper discharge of his office, as clerk of the corporation of the town of St. Charles, in the proper book of records of said corporation, are admissible as evidence in this case.

The defendant then asked the following instructions to be given by the court, which were allowed and read to the jury, to the giving of which the plaintiffs then and there excepted.

The jury are instructed that this is a penal action, and, in order to entitle the plaintiff to recover, he is held to *strict proof* in every particular, and all presumptions are in favor of the defendant.

That unless the plaintiffs have proved that the ordinance declared was properly published, and in the manner prescribed by the statute, the defendant is entitled to judgment.

That proof that copies of the ordinance were posted is not sufficient; the plaintiffs must prove that such copies were printed copies, and the burden of proof is upon the plaintiffs in this particular.

That proof that copies of such ordinances were posted in certain specified places within the limits of the corporation of the town of St. Charles is not sufficient, unless the plaintiff

The President and Trustees of the Town of St. Charles *v.* O'Malley.

has also affirmatively proved that such copies were printed copies, and that at least three of the specified places where the same were posted were three of the most public places within the corporate limits of said town.

That the certificate of the publication and posting of the ordinances contained in the book of records of said town of St. Charles, is *no evidence whatever of the publication of said ordinance*, and the jury have no right to consider it.

That although witnesses may not be impeached by proof of general reputation for truth and veracity, still the jury are not bound to believe them, if they believe that the position of such witnesses in relation to the case destroys his credibility; or if their cross examination shows them unworthy of credit; or that any of the circumstances detailed by the proof shows them unworthy of credit.

The court then, of its own volition, gave the following instructions in writing:

That the jury are the judges of the credibility of the witnesses, and if under all the circumstances developed· in the case, the testimony of any of the witnesses who have sworn is unworthy of credit, the jury should disregard it. It does not follow that because a witness has sworn to an alleged fact, the jury are to receive his testimony as true; but the jury are to take into consideration the manner of the witness, the statements he makes, his connection with the facts about which he testifies, the motives by which he seems to have been influenced, and the spirit in which he apparently gives his testimony; and if the jury think that his evidence is unworthy of belief, and that it ought not to control their verdict, they are at liberty to disregard it.

The law has ever looked with disfavor upon informers and spies, and while the fact that a witness may have acted in that character, does not, under the law, absolutely disqualify him from testifying, it is a circumstance which, if shown by the proof to exist, renders his evidence liable to suspicion and comment, and it is proper for the jury to scrutinize the testimony of a witness or witnesses, if any, who may appear by the evidence to have acted in that capacity. If the jury believe, from the testimony, that the witnesses in this case lived in a different town from that of the defendant, and that with a design and preconceived plan formed by themselves in connection with others, to entrap the defendant into the commission of an offense, in order to prosecute or cause him to be prosecuted for the same, they went to St. Charles, the place of business of the defendant, they are circumstances proper to be considered by the jury, in determining what weight is to be attached to their evidence, the law considering that a person

who, by cunning and artifice, causes another to commit an offense, is, if not equally guilty of the offense, at least so far involved in the transaction as to be looked upon with more or less suspicion, according to the circumstances of the case.

With the motives of the witnesses you have nothing to do any further than it affects their credibility; however ill-judged and wholly inadmissible you may regard, *as the court certainly does regard, efforts and means for the suppression* of the sale of intoxicating drinks, such as the proofs in this case exhibit, you are still not required to disregard their testimony merely because you may disapprove of their conduct, if you think their testimony worthy of belief.

It is for you, gentlemen, under all the circumstances, to say what credence is to be given to the several witnesses who have been sworn in the case.

To the giving of which instructions so given, the plaintiffs, by their counsel, then and there excepted.

Jury found a verdict of $25 for plaintiffs.

Plaintiffs enter their motion for new trial, which was overruled, and judgment given in favor of plaintiffs for $25 fine, each party to pay their own costs. The plaintiffs except and pray an appeal.

D. L. EASTMAN, for Appellants.

FARNSWORTH and BURGESS, and J. H. FERGUSON, for Appellee.

SCATES, C. J.   The 9th section of the charter of St. Charles (Acts 1853, p. 236), requires of the board of trustees a full and faithful record of all their proceedings, by-laws and ordinances, and of the *time, manner* and *place* of *publication* of such by-laws, in a book to be provided for that purpose, and such book purporting to be the records of the corporation of the town of St. Charles, shall be received in all courts, without further proof, as evidence of all matters therein contained. These by-laws were to be published, for ten days, in three of the most public places.

The fifth instruction, for defendant, was erroneous. The book is expressly made evidence of this very fact, and is required to contain a statement of the time, manner and place of such publication. Nor do we perceive any objection to an emendation of the entry, to make it set forth the truth as it was.

The jury evidently found the ordinance to be in force, else they could not have convicted the defendant at all, and it might, therefore, appear to render this erroneous instruction

harmless. But we need not pass upon its effect, as there are other grounds for reversal.

By the 10th section of the charter, several fines, etc., for breaches of the ordinances, not exceeding one hundred dollars, may be recovered in one action before a justice, together with costs.

The proof is clear to establish four distinct offenses, for each of which a fine of twenty-five dollars is imposed. We cannot reconcile a verdict for twenty-five dollars with the proof. The law authorized the recovery of each in one verdict and judgment. This is, therefore, a bar to the others, whether recovered or not, as they might have been. The verdict is not explainable on that ground.

We find no explanation of the finding under such evidence, other than discrediting the witnesses. For this we perceive no shadow of a ground. The witnesses *may* be notoriously infamous in that community, and unworthy of credit, for anything we know, or for anything apparent on this record.

But if the ground of discredit is to be found in the general charge of the court to the jury, we find ourselves wholly unable to agree to the law as thus laid down, or to the assumption of fact upon which it is based.

And first, as to the assumed fact that the witnesses fill the character of informers or spies, we must wholly differ with the court.

However indiscreet it may have been, to volunteer to witness the commission, and become evidence to violations of the laws, incurring thus the hatred and persecution of the party and his supporters; yet, surely, no one can justly denominate such an one either an informer or a spy. A *particeps criminis* may inform, a spy may secretly intrude upon and betray the confidence of one who trusts to a falsely assumed character. We do not perceive the first trait of resemblance between the two characters and the conduct of these witnesses. They may have acted with more zeal than knowledge, but we should regret to learn that men are to be denounced as informers and spies, who may voluntarily or involuntarily denounce and prosecute offenders against the law, order and morality of society.

As to the principle of law, spies and informers may be more or less odious, as matter of fact, as the motive by which they are prompted is patriotic or corrupt. But it is not true, as matter of law, so far from rendering a man infamous, the law encourages accomplices to repentance of their crimes, discoveries of their accomplices and offenses, and to reformations. So far from thereby becoming infamous, their testimony is not

only received, but the act is considered one of merit, and though not a matter of legal right, yet numerous instances are recorded, where the information has been rewarded with a pardon. Informers and spies may be abhorred and odious, not by reason of denouncing and giving information against crimes and criminals, but for their association and participation in lawless practices. We should not, therefore, mistake and denounce the only act through which society finds redress, instead of the crimes and criminals thus brought to light.

If men, who voluntarily or otherwise become acquainted with the secret brothels, gambling and drinking hells with which our cities and villages are sometimes overrun, and our neighbors and our children are corrupted and ruined are to lose their character for veracity, and are to be denounced as informers and spies, for seeking out and bringing these evil practices to light, then are our hopes of protection slight indeed.

We should regret to be compelled to approve and sanction such doctrines, and send forth their baneful and unhealthful influence from the bench. On the contrary, we rejoice to know the law finds no cover for its violations, nor will it defame those who ferret out crimes and bring the criminals to light.

We know of no rule of law, religion or morals that converts the acts and doings of such houses into sacred or masonic secrets, which it will destroy a man's credit to disclose. If such are the terms upon which men enter these dens, they are as unknown to the law as to religion or morality.

Lastly, the 10th section of the charter gives costs. The court erred in apportioning the costs. The statute expressly giving the costs, the party is entitled to them, and the case does not fall under the general provision of apportionment on appeals.

Judgment reversed and cause remanded for a new trial.

*Judgment reversed.*