## PEOPLE v. HILFMAN.

(Supreme Court, Appellate Division, Second Department. May 31, 1901.)

1. COUNTERFEIT TRADE-MARK—ILLEGAL SALE—EVIDENCE.

B., a saloon keeper, wrote defendant, a wholesale liquor dealer, that he desired to purchase goods, in response to which defendant's agent called at B.'s saloon and accepted an order for "Three Star Martell brandy." The agent stated that they would sell it for the price named, which was much less than the price of genuine Martell brandy, because it was a counterfeit of the genuine. The brandy was delivered by an expressman, and each bottle bore the label of Martell & Co. B. testified that he saw defendant on a later date, who stated that he had a man working for him who had previously worked for the manufacturers of the genuine Martell brandy, and that such man could put up any kind of counterfeit of Martell, etc. B. was corroborated by another witness, who was a special agent or detective for Martell & Co. Held, that the evidence was sufficient to sustain a conviction for violating Pen. Code, § 364, prohibiting any person from selling any article to which is affixed a false and counterfeit trade-mark. or genuine trade-mark, or an imitation of the trade-mark of another without the latter's consent, etc.

2. SAME—INTENT TO DEFRAUD—PURCHASER—KNOWLEDGE OF COUNTERFEIT—EFFECT.

In a prosecution for violating Pen. Code, § 364, subd. 3, prohibiting the sale, or keeping or offering for sale, of any article of merchandise to which is affixed a false or counterfeit trade-mark, etc., it was immaterial that the prosecutor knew that he was purchasing counterfeit goods, and purchased them for resale to the public.

3. SAME—ACCOMPLICE.

That B., acting in concert with a special agent of a foreign wine manufacturer, wrote to defendant, whom it was believed was engaged in the sale of counterfeit wine put up in bottles with labels intended to represent the wine of such foreign manufacturer, and solicited from defendant and purchased certain of the wine for the purpose of obtaining evidence on which defendant might be convicted of violating Pen. Code, § 364, prohibiting the sale of articles under a counterfeit trade-mark, etc., did not render B. an accomplice in the crime.

Appeal from special term, Kings county.

Aaron Hilfman was convicted of selling false and adulterated brandy under a counterfeit trade-mark, in violation of Pen. Code, § 364, and he appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Abraham Oberstein, for appellant.
William Van Wyck, for the People.

SEWELL, J.   The defendant is a wholesale and retail liquor deal-er residing in Passaic, in the state of New Jersey.   John Bohringer, a saloon keeper residing in Brooklyn, N. Y., on January 4, 1900, wrote to the defendant, asking him to call at his place of business in Brooklyn, as he wished to purchase some goods.   He inclosed his card, which was returned by one Friedlander, the agent of the defendant, to whom Bohringer gave an order for two cases of "Three Star Martell brandy" and certain other liquors.   The agent stated that the price of the brandy was $11 a dozen, and that they could sell it for that because it was a counterfeit of the genuine.   The brandy was delivered by an expressman, and each bottle bore the label of Martell & Co.   Bohringer testified:

"I saw Mr. Hilfman myself on the 30th.   He entered.   Miller sat in the rear, and I sat down with him.   He said he was Mr. Hilfman, and that he came there to see about an order I had given him for this wine.   He spoke of Mr. Friedlander, and I asked him why he didn't call.   He said Mr. Fried-lander had not been to his place of business for a week or two. * * * I asked him the price of Martell, and he said he would give me the next Martell I ordered for ten dollars.   He said he had a man working for him who used to work for James Hennessy in Cognac, France.   He said he had this man working for him, and that he could put up any kind of counterfeit of Martell," etc.

John F. Miller, a witness for the people, corroborated in most part the testimony of Bohringer; and, as to the argument that the verdict is against the weight of the evidence, it is only necessary to say that a careful consideration satisfies me that the question of fact was correctly disposed of, so far as the defendant's guilt is concerned.

The appellant also contends that, because Bohringer knew at the time of the purchase and at the time that he received the goods that the Martell & Co. labels upon the bottles were counterfeit, the judgment of conviction cannot be sustained.   Section 364 of the Penal Code reads as follows:

"Offenses against Trade-Marks.   A person who knowingly in a case where provision for the punishment of the offense is not otherwise made by statute: * * * (3) sells, or keeps or offers for sale, an article or merchandise to which is affixed a false or counterfeit trade-mark, or the genuine trade-mark, · or an imitation of the trade-mark of another, without the latter's consent; * * * is guilty of a misdemeanor."

This section of the Code is a re-enactment of the law in respect to the violation of trade-marks (chapter 306, Laws 1862, as amended by chapter 209, Laws 1863).

The case cited by the appellant, upon which he mainly relies (Low v. Hall, 47 N. Y. 104), was an action for a penalty, brought by the owner of a trade-mark, under section 4, c. 209, of the Laws of 1863. By this section the owner of any such goods was given a right of action for a penalty.   The trial court held that the intent to de-fraud was not a necessary element, and so charged the jury.   The court of appeals held this to be error, and, after discussing some of the changes made in the Laws of 1862 and 1863, said:

"A party selling to a purchaser, having full knowledge of all the facts, for the purpose of resale by him, with intent to defraud the owner of the trade-

mark by such resale, being made upon the credit of the mark, may be liable for the penalty to the owner of the trade-mark."

The contention on the part of the defendant that the legislature intended by the enactment of this section to protect the public from the sale of counterfeit goods, when intending to purchase the genuine, is undoubtedly correct. But when he assumes that because the complainant knew that he was purchasing counterfeit goods, and purchasing them for resale to the public, so far as defendant knew or had a right to suppose from the occupation of the complainant, the statute was not violated, his position is not based upon sound principles of law or reason. The complainant in this case was acting with one Miller, a special agent employed by the Martells. It is not claimed that either was a public officer, and that they were not accomplices in crime was held in People v. Noelke, 29 Hun, 461. The court there said that it had "become a necessity for the suppression of crime to resort to this mode of ascertaining whether a prohibited and criminal act may be committed." In the case at bar the jury had a right to find that the liquor was not purchased by Bohringer with a criminal intent, to wit, to resell to the public. It was bought for the purpose of proving the fact of sale by the defendant. The design of his writing to the defendant to call upon him, as he wished to purchase some liquor, was to obtain testimony that the defendant was engaged in unlawful business. The complainant was not an accomplice. There was no criminal intent. People v. Farrell, 30 Cal. 316; President, etc., v. O'Mailey, 18 Ill. 407. The utmost that can be said of the person so employed is that he is an informer, and leave to the jury the consideration of his evidence as such. The principle laid down in this case was recognized in People v. Molins, 7 N. Y. Cr. R. 51, 10 N. Y. Supp. 130. It there appears that the purchase was made by a detective acting on behalf of the owners of the trade-mark, and that what was done in the case was done for the purpose of obtaining evidence on which to predicate the prosecution. It also appeared that the labels alleged to be counterfeited were made at the instance of the agent of the owners of the trade-mark. The court refused to charge that the person who made the purchase was an accomplice, and the same rule was followed by the supreme court of the United States in Grimm v. U. S., 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 553, and Andrews v. U. S., 162 U. S. 420, 16 Sup. Ct. 798, 40 L. Ed. 1023.

The judgment of conviction should be affirmed. All concur.