## WILLIAMS *v.* BUCHANAN.

### Opinion delivered April 20, 1908.

| 86 | 259 |
|----|-----|
| f86 | 614 |
| 86 | 259 |
| 90 | 377 |

1.  APPEAL—ELECTION CONTESTS—CONCLUSIVENESS OF FINDINGS OF FACT.—
    Findings of fact by a circuit judge in the trial of a contested election
    are as conclusive as the verdict of a jury upon conflicting evidence.
    (Page 271.)

2.  ELECTION CONTESTS—FINDING OF FRAUD—SUFFICIENCY OF EVIDENCE.—A
    finding that the fraudulent conduct of the election judges in a certain
    voting precinct was of such extent as to discredit their returns is
    sustained by evidence that in seven instances where voters directed
    their tickets to be made out for contestant the election officers made
    it out for contestee, that in six instances the election officers elec-
    tioneered with illiterate voters while making out their tickets, that in
    numerous instances one of the judges, instead of two, made out the
    ticket of a voter, that 255 votes were returned for contestant when 297
    qualified voters testified for him, and that after the election the ballots
    of the precinct were stolen and could not be produced.   (Page 268.)

3.  SAME—PAROL PROOF OF VOTE.—Where the returns of a precinct are dis-
    carded, in an election contest, the parties are entitled to prove the
    number of votes in their favor by parol evidence.   (Page 269.)

4.  SAME—SUFFICIENCY OF PROOF OF FRAUD.—Where the evidence shows
    that five votes in a certain box were changed by one of the judges
    of election, that in three instances where voters directed the judges
    to make ballots for contestant they were made out for contestee, that
    many persons were allowed to vote who were not entitled to do so,
    and that in numerous instances one judge, instead of two, made out
    tickets for illiterates, a finding that the box should be discarded will
    not be set aside.   (Page 270.)

5.  SAME—CONTINUANCE.—Kirby's Digest, § 2861, providing that the
    county court shall determine election contests at its first term held

fifteen days after the election, does not preclude the county court from exercising its power to continue a case for good cause shown. (Page 271.)

6. SAME—PRACTICE ON APPEALS FROM COUNTY COURTS.—Under Const. 1874, art. 7, § 51, providing that "in all cases of contest for any county, township or municipal office, an appeal shall lie, at the instance of the party aggrieved, from any inferior board, council or tribunal to the circuit court, on the same terms and conditions on which appeals may be granted to the circuit court in other cases, and on such appeals the case shall be tried *de novo*," in an election contest in the circuit court on appeal testimony may be heard which was not introduced in the county court. (Page 271.)

7. SAME—POWER OF COURT OVER BALLOTS.—A court having jurisdiction of an election contest may make orders for preserving the ballots and using them as evidence; and, unless there is some abuse of the court's power in this respect, there is nothing for the Supreme Court to review. (Page 272.)

8. SAME—POWER OF COUNTY COURT.—The only result of election contests before the county court, or before the circuit court on appeal therefrom, under Kirby's Digest, § 2862, is to ascertain the result of the election and to certify the same to the Governor, "who shall commission the person declared duly elected by such order;" the court not being authorized to give a judgment of ouster in any case. (Page 272.)

9. APPEALS—COSTS ON REVERSAL.—Under Kirby's Digest, § 970, providing that "if any person shall sue out a writ of error or take an appeal to review the judgment of any circuit court, * * * if the judgment be reversed, the plaintiff in error, or appellant, shall recover his costs," all the costs of an appeal from the circuit court are adjudged against the appellee if the appellant succeeds in obtaining any substantial or material reversal of the judgment. (Page 277.)

Appeal from Garland Circuit Court; *W. H. Evans,* Judge; reversed in part.

Buchanan instituted a contest for the office of sheriff of Garland County against Williams, alleging that contestant was duly elected, and that various frauds were committed in the election, whereby contestee secured a certificate of election and was commissioned.

The court made various findings of fact, of which it will be necessary to set out only the second, third and fifth, to wit:

"Second: That the judges in the election in Hot Springs Township voting precinct were guilty of wilfully fraudulent conduct in conducting said election by making out the votes of illit-

erate voters contrary to the directions of such voters, thereby making such voters vote for said Williams when they intended to and thought they were voting for Buchanan; that said judges in said Hot Springs Township precinct also wilfully violated the law by one of said judges making out the tickets or ballots of many illiterate voters in the absence of both of the judges and by the electioneering for said Williams in the voting room with the voters who came there to vote, the said judges fraudulently failed to count for Buchanan about forty votes which were cast for him, and that the fraudulent conduct of the said judges in said Hot Springs Township precinct was of such character and extent as to render the result of the said election in said precinct uncertain.

"Third: That the election judges in the Second Ward of the city of Hot Springs were guilty of wilfully fraudulent conduct in making out the ballots or tickets of voters contrary to the direction of such voters, so as to make said voters vote for Williams when they intended to and thought they were voting for Buchanan; that one of said judges fraudulently erased names from some of the ballots during the counting of said ballots after the polls were closed; that said judges also wilfully violated the election law by one of said judges making out the ballots or tickets of many illiterate voters when both of the other judges were absent; that said judges also wilfully and fraudulently allowed many persons to vote in said election who were not legal voters in said Second Ward precinct, and wilfully and fraudulently refused to allow witnesses to appear before said judges to testify as to the qualifications of illegal voters, and that the fraudulent conduct of said judges in said Second Ward precinct rendered the result of the election in said precinct uncertain.

"Fifth: That the contestant has proved by competent evidence that 297 legal votes were cast for him in said Hot Springs Tonwship precinct at said election, and that by ignoring and throwing out the vote of Hot Springs Township as certified by the election commissioners, which, as a matter of law, is done, and giving to Buchanan the vote cast for him in said Hot Springs Township without purging the First, Second and Third Ward precincts of the city of Hot Springs of the said

illegal votes cast for said Williams, and Buchanan has a majority of 184 legal votes in the county; and by throwing out the votes of Hot Springs Township as certified by said judges and commissioners and giving Buchanan the benefit of the said 297 votes which were cast for him in said township, and purging the First, Second and Third wards of the city of Hot Springs of the illegal votes which were cast for Williams in said precincts, and Buchanan's majority is 408. By throwing out the vote of Hot Springs Township and Second Ward of said city, as certified by the election officers, which as a matter of law is done, and giving to Buchanan the legal votes cast for him in said township, without purging the First and Third Ward precincts of the said illegal votes which were cast for Williams, and Buchanan's majority is 390, and by throwing out the votes of said township and the Second Ward as certified by the election officers and purging the First and Third Ward precincts of the said illegal votes which were cast for Williams and giving Buchanan the benefit of the legal votes cast for him in the township, and Buchanan's majority of legal votes in the county is 522. So that from every aspect of the case, as shown by the evidence, Buchanan was elected sheriff and *ex officio* collector of Garland County."

The court declared as a matter of law as follows:

"And as matter of law the court finds that the said S. A. Buchanan should have judgment against the said Williams for the possession of said office; that said Williams should be ousted therefrom, and that said Buchanan should recover against the said Williams the sum of $7,776.19 as his damages for being kept out of said office since the 31st day of October, 1906, to the first day of September, 1907, the date to which the proof in this case shows that said Williams has received and collected the salary and emoluments of said office; that the votes and returns of Hot Springs Township, and the Second Ward of the city of Hot Springs, as certified by the election judges and the election commissioners should be and are thrown out and ignored in determining the results of said election, because of the wilfully fraudulent acts and conduct of said election judges in conducting and holding said election, and that the vote proved by the respective parties hereto as cast for them in said voting pre-

cincts, independent of said certified returns, should be and are considered in arriving at the result of said election."

Contestee has appealed.

*C. V. Teague, Jas. P. Clarke* and *R. G. Davies,* for appellant.

1. The evidence does not sustain the second finding of the court as to Hot Springs Township, nor the third as to the Second Ward of Hot Springs. No fraud is shown, only that several mistakes were made. It was shown to be untrue that any ballots were made out contrary to the directions of the voters.

2. Ballot boxes must remain in custody and care of the proper officers prescribed by law. Slight irregularities of officers as to keeping or disposition of ballots or boxes are not grounds for exclusion of ballots, if it is clear no prejudice has resulted. If it appears that the ballots have been tampered with, they should be rejected as evidence. Kirby's Digest, § 2838; 10 A. & E. Ency. Law, 732; 50 Ark. 85; 15 Cyc. p. 426-7; McCreary on Elections, § 471. When ballots have been tampered with, the original count must prevail. 25 Col. 308; 15 Cyc. p. 429, § 4; *Ib.* p. 430.

3. An inspection of the ballots should not be ordered until the evidence is all in, and it is shown with reasonable certainty that ballots were illegally cast and that an examination is material to the determination of the contest. 12 Penn. 575; McCreary on Elections, § 482; 10 Phil. (Pa.) 389. It is therefore error to admit any ballot boxes or ballots in evidence and thereby overcome the presumption in favor of contestee and the returns. The burden was on contestant to prove by whom and for whom the ballots were cast. Where the alleged illegality of ballots cast is *not clearly proved,* it is proper to dismiss the contest. 15 Cyc. pp. 416-417; 41 Ark. 111.

4. Misconduct of election officers or irregularities must affect the result, or the election is not vitiated. 10 A. & E. Enc. Law, p. 67 and notes. Fraud vitiates an election return, but the entire return of a precinct should not be rejected when possible to eliminate fraudulent votes. 15 Cyc. p. 368; 42 Kans. 54. The result must be changed. 61 Ark. 286; 58 *Id.* 169.

5. The judgment of ouster and for fees, etc., clearly er-

roneous. *Rhodes* v. *Driver,* 69 Ark. 606; 5 L. R. A. 403; 11 Nev. 382; 15 Cyc. 440.

6. The depositions before the county court should have been suppressed. 80 Va. 58; 9 Ind. 31; 82 Va. 827; 2 A. K. Marsh (Ky.), 236; 33 Ind. 305; 13 Cyc. 938-9; 6 Enc. Pl. & Pr. p. 536, 604, 632.

7. The findings of a judge in a contested election case have the same effect *as special findings of a jury.* 73 Ark. 190.

8. All evidence after the trial in the county court and afterwards should have been excluded. Kirby's Digest, § § 2860-1-2.

9. It was incumbent on appellee to show for whom all alleged illegal ballots were cast. 39 Atl. Rep. 686; 15 Cyc. note c and 419; 54 Pac. 71; 70 S. W. 852; 41 *Id.* 578.

10. The case was not tried at the *first* term of the county court after the election, and it abated. Kirby's Digest, § § 2860-1; 69 Ark. 501; 41 *Id.* 127; 70 *Id.* 240; 75 *Id.* 457; 128 Ind. 174; 34 Cal. 329; 331, etc., and p. 635.

*Greaves & Martin* and *Wood & Henderson,* for appellee.

1. The findings of the circuit court have the same force and effect as the verdict of a jury, and will not be disturbed by this court if there is any evidence to support them. 73 Ark. 190; 50 *Id.* 85; 53 *Id.* 161; 50 *Id.* 275, 308; 01 *Id.* 247. The evidence sustains the findings of the court on all material points. On the second finding, it is shown that the judges electioneered in the poll room. Kirby's Digest, § 2853. The finding as to the second ward in Hot Springs is also amply sustained, and this, if the court properly declared the law, ends the controversy, as it gives Buchanan a majority sufficient to elect him. Fraud discredits returns, and they should be discarded, and only the votes proved should be counted. McCreary on Elections, § 574; 41 Ark. 111; 53 *Id.* 161; 61 *Id.* 257; 69 *Id.* 501; 73 *Id.* 193; 10 Am. & E. Enc. Law. 774, 838; 53 N. W. 944; 66 *Id.* 388; 24 Pac. 26; 49 Am. St. Rep. 69; Paine on Elections, § § 592, 596; 25 L. R. A. 325.

2. The court properly refused to suppress the depositions filed in the county court. They were afterwards duly transcribed, signed, filed, etc., within a reasonable time. There is

nothing in the law limiting the time within which depositions must be transcribed, signed and filed.

·    3.  Under our practice all appeals to the circuit court are tried *de novo,* and all depositions taken, whether in or. after the trial in the county court, should be read. 69 Ark. 511. This case was properly. decided on this point, · and should not be overruled.  The court properly ordered the ballot boxes opened. All the law requires is that the evidence show that the ballot boxes have not been tampered with.  20 Pac. 17; *Ib.*.95; 79 N. Y. 290; 31 Minn. 416; 41 N. E. 1116; 64 N. Y. 292; 32 S. W. 1022; 12 *Id.* 959; 42 N. E. 167.

4.  The motion to dismiss in this court because the case was not tried at the term next succeeding the election should be denied.  The word ".shall" in Kirby's Digest, § 2861, is directory merely.  41 Ark. 127; 7 Words & Phrases, 6464-5.

5.  The judgment is not excessive in amount nor unwarranted in scope.  Kirby's Digest, § 2859, authorizes a judgment of ouster and for damages not exceeding the salary and fees, etc.  This question was not before the court in *Rhodes* v. *Driver,* 69 Ark. 610.  This was a trial *de novo* in the circuit court, and is regulated by statute.  Kirby's Digest, § 1314; art. 8, § 51, Const. Ark.  On appeal the court was bound to render judgment as if it had been exercising original jurisdiction.  33 Ark. 511; 34 *Id.* 244; 8 Houston (Del.), 163; 32 Atl. Rep. 225; 55 Tex. 273-277.

6.  Kirby's Digest, § 2859, is a general provision applying as well to judgments of county courts as to circuit courts, and is so digested.  *Rhodes* v. *Driver, contra,* is *obiter dictum.*  If not, it should be overruled on this point.

·   *C. V. Teague, J. P. Clarke,* and *R. G. Davies,* for appellant.

*On motion to retax costs:*  The judgment was reversed and judgment here in favor of appellant for costs is right.  In ordinary cases the matter of costs is largely in the discretion of the court.  Kirby's Digest, § 967.  But in this case Buchanan is the only party to the action against whom a judgment for costs is authorized by statute.  Kirby's Digest, § 2865, 2866, 2877.  See also 68 Ark. 130.  The court has no authority to give judgment

for costs in a contested election case unless there is a statute expressly authorizing it. A statute regulating the taxation of costs in civil actions will not be construed to give such authority. 15 Cyc. 440-441; McCreary on Elections, § 458. In special proceedings costs will not be allowed except by legislative enactment. 11 Nev. 386; 25 Ark. 235; 70 Ark. 240; 75 Ark. 456.

*On the petition for rehearing:* Election contests are political questions. McCreary on Elections, § § 454-5; 41 Ark. 240; 70 Ark. 240. For distinction between appeals from county court to circuit court in political matters and ordinary cases, see 33 Ark. 513, from which it appears that, unless there is an abuse of discretion, fraud or mistake on the part of the county court, its findings should be sustained. The determination of an election contest is a judicial function only so far as authorized by statute. 15 Cyc. 395. The rule under which this court affirmed the judgment in favor of Buchanan is merely technical, it is a harsh one, and the court may properly not adhere to it when its application will, as in this case, necessarily result in injustice. 43 Ark. 391; 44 Ark. 411.

*Greaves & Martin* and *Wood & Henderson,* for appellee.

The condition on which the appellant can recover costs is that the judgment be reversed. Kirby's Digest, § 970. In this case the judgment was not reversed, but, on the contrary, the most important part of it, the title to the office, was affirmed. In cases where the judgment of the lower court is affirmed in part and reversed in part, this court must necessarily have and exercise a discretionary power with reference to the apportionment of the costs. 49 N. Y. 660; 42 Pac. 129; 5 Enc. Pl. & Pr. 192, 202. This court has exercised that discretion in many instances. 66 Ark. 271; 70 Ark. 331; 69 Ark. 302.

The above statute, section 970, is no more mandatory than section 965, Kirby's Digest, yet this court, under the latter, has repeatedly held that the circuit court is vested with discretion to determine whether costs incurred by either party are unreasonable or unnecessary, and to award judgment accordingly. 65 Ark. 219; 17 Ark. 361.

HILL, C. J. Williams and Buchanan were opposing candidates for sheriff of Garland County. On the face of the returns

Williams had 2,495 votes and Buchanan 2,146. Williams was commissioned, and took charge of the office, and Buchanan instituted a contest in the county court which resulted in Williams's favor there. Buchanan appealed, and on trial *de novo* in the circuit court Buchanan' was declared elected, and a judgment for the office and for its emoluments was rendered in his favor. Williams appealed. This court superseded the judgment pending the appeal. See *Williams* v. *Buchanan,* 84 Ark. 404.

1. The first question is the effect to be given to the findings of fact by the circuit judge in election contests. It has long been the settled law of this State that the findings of fact by a circuit judge in the trial of a contested election are as conclusive as the verdict of a jury upon conflicting evidence, yet such is not accepted as the law by the appellant herein. It is urged that, as the testimony is upon depositions, this court has the same opportunity of weighing its truth that the circuit court had, and that only persuasive effect should be given to the findings of fact; and again there is much of appellant's argument spent in attacking the credibility and weight of the testimony. These questions are not open now. The duty of this court in election cases was well stated by Chief Justice COCKRILL, in *Jones* v. *Glidewell,* 53 Ark. 161: "It is not the practice of appellate tribunals, and has never been the practice of this court, to enter anew into the investigation of issues of facts which have been tried in a law case by a circuit judge upon conflicting testimony. * * * But, while we will not enter upon an investigation to ascertain where the weight or preponderance of the testimony lies, it is our province to determine whether a given finding or verdict has testimony to sustain it; and where there is no conflict in the evidence, or the facts are specially found, the conclusion of law or judgment to be deduced therefrom is purely a question of law to be finally determined by this court."

This subject was reviewed in *Schuman* v. *Sanderson,* 73 Ark. 187, an election contest, where the same contentions were made by the appellant there that are made by the appellant here. After reviewing the previous decisions upon the subject, it was said: "The only question presented in appeals on law cases on the facts is whether the evidence is legally suffifficient to sustain the verdict or finding. Therefore the inquiry in this case is

merely whether there is in each instance evidence legally suffi-
cient to sustain the finding, and the finding must be sustained
if there is such evidence, notwithstanding a decided preponder-
ance may be against it."

The trial court made various findings of fact as to the dif-
ferent precincts. Under any of these findings, Buchanan re-
ceived a majority of the legal votes cast. It is not necessary for
the court to discuss all of these findings, for if any one of them
is sufficiently sustained by the evidence to give the election to
Buchanan that ends the inquiry here. It is wholly immaterial
whether Buchanan received a majority of 59 votes, as found in
the first finding, or whether he received a majority of 522, as
found in the fifth finding.

The court has carefully considered all the findings, but will
only discuss the second finding, which relates to Hot Springs
township precinct, and so much of the third finding as relates
to the second ward of the city of Hot Springs. These findings
will be set out in the Reporter's statement of facts. In each of
these precincts the returns were discredited for fraud, and in the
township precinct the votes proved outside the returns were
counted.

The testimony adduced on behalf of appellee to sustain the
finding as to the township precinct may be summarized as fol-
lows: In seven different instances where election officers were
called on to make out tickets for illiterate or incapacitated per-
sons, there was testimony tending to prove that the voter directed
the ticket to be made out for Buchanan, and the election officer
made it out for Williams. In some instances this mistake or
fraud was detected and rectified; in other instances the vote was
cast for Williams. These seven instances were proved by nine
witnesses. In some of these cases the fraud or mistake ex-
tended to all of the independent ticket (which was the name of
the ticket upon which Buchanan was a candidate) as well as
Buchanan; in other instances a similar mistake or fraud was
proved in regard to the candidate for county judge on Buch-
anan's ticket, where the ticket for Buchanan was properly made
out. Seven witnesses testified to six instances of electioneering
by the election officers while making out these tickets for the
illiterate voters. Four of these instances of electioneering were

in favor of Williams, and two for the candidate on Williams's ticket for county judge. Numerous instances were proved of one of the judges making out a ticket, instead of two, as the law requires where the voter is illiterate or physically incapacitated from making out the ticket, and a few instances of a clerk, instead of two judges, making out tickets for the illiterate voters.

The judges returned 255 votes for Buchanan, and 297 qualified electors of the township testified that they had voted for Buchanan, and this was uncontradicted. There was also evidence tending to show that all of the judges were supporters of Williams. This has no weight other than to indicate that irregularities were not inuring to the injury of Williams.

In the progress of the case the ballot boxes were ordered opened, and the boxes of the Hot Springs township and the sixth ward of the city showed only excelsior and gunny sacks, the ballots having been abstracted. The court found this had been done after the result had been ascertained and declared by the election commissioners. There seems to be no evidence connecting either of these parties with the theft of the ballots, and the fact of the theft of the ballots in the precinct is only mentioned here to explain why the ballots were not in evidence to corroborate or refute much of this testimony.

Other facts of less weight than those mentioned were proved which were proper to be considered by the court. In view of this testimony, which the trial court accepted as the truth, it cannot be said by the court that there is no sufficient evidence to sustain the action of the court in discrediting and discarding the returns of that township and accepting only the evidence of votes proved.

Williams took no testimony to prove how many voters in the precinct voted for him. The election officers returned 491 for him. In the entire county the returns gave 2,498 for Williams and 2,146 for Buchanan. When Hot Springs township is thrown out it leaves the vote to stand: Wiliams, 2,004, Buchanan, 1,891. To Buchanan's vote must be added the 297 which he proved voted for him. As stated, Williams did not prove any voted for him; he relied upon the returns, and did not avail himself of the right to prove his vote. The returns being discarded, then, un-

der the law, only such votes as were proved can be counted. *Rhodes* v. *Driver,* 69 Ark. 501; *Freeman* v. *Lazarus,* 61 Ark. 247; *Jones* v. *Glidewell,* 53 Ark. 161. As shown by the above calculation, this gives the office to Buchanan by 184 majority.

The returns from the second ward of Hot Springs were discarded, and the evidence to sustain this action is substantially as follows: There were 695 votes returned. There was testimony adduced to prove that there were only 430 to 440 legal voters in the ward. Three witnesses testified to one judge changing ballots after the election. The ballots were examined in this box, and it was found that only five were scratched in the method indicated by these three witnesses. Some of these were explained by witnesses, so that the force of this testimony was minimized by the physical facts, yet it had some probative weight. There was testimony of four witnesses as to three instances where voters directed the election officers to make ballots for Buchanan which were found made out for Williams. There was testimony tending to prove that Williams's partisans were bringing to the polls many negroes and others who appeared to residents of the ward to be strangers. There was much evidence directed to proving that a large number of the voters did not live there, and were imported by Williams's partisans and voted regardless of challenges, and that the election officers knowingly permitted this. Numerous instances of one, instead of two, judges making out tickets for illiterates were proved. This testimony is sufficient to sustain the court in casting out the returns from this precinct. Neither side made proof of the votes cast in this ward, and therefore, the returns being discredited and rejected, the vote returned from that ward must be subtracted from the returns. This, with the finding as to Hot Springs township, gives Buchanan 390 majority in the county. It is futile to pursue the other findings, as it is immaterial whether they are sustained by or are contrary to the evidence.

There is much testimony adduced by the appellant tending to prove that the instances of wrong marking of ballots were mere mistakes unintentionally done, and many of the apparent irregularities were explained as innocent of wrongdoing, and that the election was fairly conducted and returned by the election officers. But, as heretofore shown, this court cannot go

into any of these questions, being confined solely to determining whether testimony legally sufficient to sustain the findings had been adduced.

2. Appellant insists that the county court lost jurisdiction of this contest because it was not tried at the first term of the county court to which the action was returnable. Section 2861 of Kirby's Digest, which is section 72 of the act of January 23, 1875, reads as follows: "Either party may, on giving notice thereof to the other, take depositions to be read in evidence on the trial, and the court shall, at the first term (if fifteen days shall have elapsed after such election, and if less than fifteen, then at the second term), in a summary way, determine the same according to evidence."

The argument is that the cause was not tried at the first nor the second term of the court, and the appellant did not request nor agree to a continuance, and that therefore the county court lost jurisdiction. The evident purpose of this section was to enforce a speedy trial in the county court of contests of the election of officers over which that court had jurisdiction. But it would be a strained and unnatural construction of this statute to hold that the Legislature intended by it to oust the jurisdiction of the only court which it had authorized to try these contests if the same were not tried at the first term, or, in the contingency therein named, at the second term after the election. The law necessarily contemplates unavoidable contingencies, illness of parties and witnesses, and similar causes which make it just to grant continuances and unjust to refuse them.

This is plainly a direction to the county court to proceed to trial summarily at the term therein mentioned; but it does not preclude that court, when it once has jurisdiction, from exercising its power to continue a cause for good cause shown to it. Without good cause shown, it is plainly the duty of the court to try it according to the directions contained in this statute.

3. It is contended that testimony could not be taken in the circuit court on appeal, and that all testimony had to be taken in the county court and the trial had in the circuit court upon the testimony presented to the county court. This is contrary to the settled practice in election contests, and also to all other appeals from the county court to the circuit court. Art. 7, §

51, of the Constitution provides that "in all cases of contest for any county, township or municipal office, an appeal shall lie, at the instance of the party aggrieved, from any inferior board, council or tribunal to the circuit court, on the same terms and conditions on which appeals may be granted to the circuit court in other cases, and on such appeals the case shall be tried *de novo*." Any statute or practice which would limit this right of trial *de novo* in the circuit court would be unconstitutional, and the court fails to find that any attempt has been made to do so in any of the statutes upon this subject.

4. A motion was made to suppress the depositions taken because they were not subscribed by the witnesses and certified as required by law, which motion was supported by affidavits. A response was filed setting forth that the signatures were waived, and explaining the other alleged irregularities, and supporting affidavits were filed. The stenographer by whom the depositions were taken thereafter took a carbon copy of the depositions, three copies having been made, and submitted the same to the witnesses, and obtained their signatures thereto, and filed the copies so signed as the depositions. Thereafter the court overruled the motion to suppress the depositions. The argument against these depositions is made without reference to the act of May 11, 1905, amending sections 3184, 3185 of Kirby's Digest. While this statute is not literally pursued, yet it is substantially complied with, and there is no question raised as to the authenticity of the depositions as finally filed with the signatures of the witnesses. The objection to the depositions is without merit.

5. In the course of the proceedings, the court ordered the ballot boxes opened in order that the ballots be used as evidence. A court having jurisdiction of an election contest may make orders for preserving the ballots and using them as evidence (Kirby's Digest, § 2838) ; and, unless there is some abuse of the power of the court in this respect, there is nothing for this court to review. No abuse of power in this regard is shown here.

6. This only leaves for consideration the form of the judgment. Judgment was entered in favor of Buchanan ousting Williams from the office of sheriff, and rendering judgment

against him for the sum of $7,776.19 as the net profits of said office from the 31st day of October, 1906, to the first day of September, 1907.

In *Rhodes* v. *Driver*, 69 Ark. 606, the statutes regarding contests for county officers were construed. After reviewing them thoroughly, the court said: "In defining the jurisdiction of the two courts, the act authorized the circuit court, in the event the contestant succeeded, to render a judgment of ouster, and for damages and costs, and in that event limited the county court to an order declaring the contestant elected, and, incidentally, to a judgment for costs. In the latter class, if the contestee refuses to yield possession of the office, the contestant is left to the remedy provided by the statutes for the possession of an office unlawfully held. Sandels & Hill's Digest, § § 7364-7372."

This construction of the statute renders erroneous this judgment for ouster and for damages, which are the emoluments of the office. But the appellee insists that what was said in *Rhodes* v. *Driver* in construing these statutes was *obiter dictum* and unsound, and asks a re-examination of that case. The court is unable to see wherein it was *obiter dictum,* as the court was called upon to construe the statutes on the subject in order to determine the question then before it. But, as the circuit court refused to follow that decision, presumably upon the ground that it was *obiter dictum,* and counsel earnestly insists that it be not followed, the court has re-examined the question.

Turning to the original act (January 23, 1875), which was a general election law, it is found that in section 67 a contest for the office of any supreme judge, commissioner of State lands, circuit judge, prosecuting attorney, chancellor or judge of the county and probate court shall be made in the circuit court, and provides the venue for such contests. Section 68 prescribes the procedure for such contests in the circuit court, and the last paragraph of that section reads: "If the contestant shall succeed in his action, he shall not only have a judgment of ouster, but for damages, not exceeding the salary and fees of the office during the time he was excluded therefrom, with costs of suit; provided, either party shall have the right of appeal, with or without supersedeas, as in other cases at law."

This paragraph is digested as section 2859 of Kirby's Digest, but as stated it is a part of section 68, and immediately follows so much of that section (which is section 2858 of Kirby's Digest) which prescribes the procedure in the circuit court for the contest of the offices named in section 67 (which is section 2856 of Kirby's Digest).

The next section, 69, deals with vacancies in office. Section 70 deals with special elections. Section 71 (which is section 2860 of Kirby's Digest) provides for the contest of county and township offices, and provides that they shall be before the county court, and prescribes the notice to be given and other matters of procedure. Section 72 (which is section 2861 of Kirby's Digest) is a direction as to the time of trial in the county court. Section 73 (which is section 2862 of Kirby's Digest) is as follows: "If the court shall be of the opinion that the person proclaimed elected is not duly elected, and the person contesting is elected, an order shall be entered to that effect, and a copy thereof shall forthwith be transmitted to the Governor, who shall commission the person declared duly elected by such order." Section 74 (section 2863 of Kirby's Digest) makes it the duty of the Governor to revoke the commission which has been issued to the person who was unsuccessful in that contest. Section 75 (section 2864 of Kirby's Digest) provides that "nothing in this act shall be construed so as to make void any act of the person so commissioned that would otherwise have been lawful." The next section takes up contest for members of the General Assembly. Thus it is seen that the act of 1875 took up each of these different classes of offices and provided a complete procedure for a contest for each class. And the procedure in one cannot be transported and tacked on to another without doing violence to rules of construction and grammar and also to the plain intent of the lawmakers.

It is insisted that section 2859 is general and applies to all contests, but, as seen, this cannot be the case, as it only appeared as part of the section prescribing the procedure for those contests which were to be brought in the circuit court; and had not the slightest reference to the contests elsewhere provided to be brought in the county court. For some reason, deemed by it good, the Legislature has not thought it wise to give to the

county court the power to render judgment for ouster and the emoluments of the office, but has given it jurisdiction merely to try contests for county and township offices in a summary manner, subject to appeal to the circuit court, where the trial must be had *de novo*. The only result of that trial in both the county and circuit court on appeal is to ascertain the result of the election and to certify the same to the Governor, and it is made the duty of the Governor to issue a commission and to revoke a commission pursuant to the result of the judgment in the premises. It is insisted that this is a cumbersome method of trying these contests, and that there should be but one suit to determine the contest and the ouster of office and emoluments. There is much force in this argument, but it is addressed to the wrong forum. Courts cannot make laws. They can only construe them. The Legislature has decided that it is not wise to give to the county court power to oust the contestant from office and to give judgment for anything other than the costs, leaving those matters to be worked out in subsequent suits if the contestee does not abide the result of the findings.

It has long been settled law that in all cases of appeal from the inferior courts to the circuit court, no greater jurisdiction is given to the circuit court than is given to the lower court in the first instance. It merely tries the case *de novo,* sitting as a justice, or county or probate court, so far as jurisdiction is concerned. The act in question was passed in 1875, and *Rhodes* v. *Driver* was decided on the second day of November, 1901, and these sections were then construed. It was therein shown that in these contests for county offices there could be no judgment other than a judgment finding the result, which judgment was to be the basis for the Governor to issue the proper commission and to revoke the commission of the person who had lost, and for a suit for the office and its emoluments. It was clearly pointed out that if the party after this contest did not surrender the office, then the party was remitted to his action for the office and for damages under actions provided by another statute.

If the people of the State had not been satisfied with the law found on the statute book, they could easily have changed it, especially after attention was called to it by this decision.

But they have seen fit to leave the laws as framed in 1875. The court is satisfied that *Rhodes* v. *Driver* was a correct construction of the statute, and declines to overrule it.

In view of the fact that the effect of this decision is to entitle Buchanan to recover of Williams the office and its emoluments, and the judgment herein reversed was for $7,776.19 as net profits for ten months' incumbency, the court calls attention of the trial court to section 23, art. 19, of the Constitution, forbidding any county officer receiving more than $5,000 net profits per annum, and sections 3543, 3547, 3549 of Kirby's Digest, making this provision effective as to county officers. *Griffin* v. *Rhoton*, 85 Ark. 89.

The result therefore is that the circuit court had sufficient evidence to sustain its findings that Buchanan was elected sheriff of Garland County and Williams was not, and to that extent the judgment is affirmed. It was the duty of that court to enter judgment in conformity with section 2862 of Kirby's Digest, and a certified copy thereof should be transmitted to the Governor pursuant to the requirement of that section, so that he may perform the duty imposed on him by sections 2863-2864. The judgment which should have been entered by the circuit court as the necessary result of its findings of fact will be entered here.

So much of the judgment as ousts Williams from office and renders judgment for the emoluments thereof is reversed.

### ON REHEARING.

### Opinion delivered May 23, 1908.

HILL, C. J. Appellant refers to *Dodson* v. *Fort Smith*, 33, Ark. 508, and contends that under it the findings of the county court should be sustained unless there was an abuse of discretion, fraud or mistake of the county court, and seeks to escape the force of the finding in the circuit court against him on the ground that the circuit court should only have reviewed the action of the county court so far as to see whether there was an abuse of discretion, etc. It is not necessary to question the force of this decision as an authority. Suffice it to say that it will not apply here, for the Constitution expressly provides

that an appeal shall lie to the circuit court from any inferior tribunal invested with jurisdiction to determine election contests of county officers, and on such appeal the trial shall be *de novo.* Art. 7, § 52, Const.

It is contended that the decision is a result of a technical rule, which does not give a trial here on the merits, and that the practice of affirming a judgment when there is evidence to sustain it should be overruled, and the case tried on its merits. The law has provided a trial *de novo* in the circuit court on appeal from the county court, and one here to decide the correctness of the proceedings of that court and to determine whether there was sufficient evidence to sustain its finding. This is not a technical rule, but a constitutional and legislative scheme for the determination of these cases; and, until there is a change in the law, it is not open to the court to refuse to obey it.

The motion is denied.

## ON MOTION TO RETAX COSTS.

### Opinion delivered May 23, 1908.

HILL, C. J. Buchanan files a motion to retax the costs and apportion the same so that only such costs as accrued on that part of the judgment which gave an ouster and for the emoluments of the office be adjudged against him. As these were the only parts of the judgment which were reversed, he contends that only the costs incident to these features should be adjudged against him. He shows that most of the transcript is taken up with testimony relating to the title to the office—and the copying of this evidence is the heavy item of the costs—and he contends that, as he prevailed on that issue, he should have the costs which were incurred on it.

If the court had discretion in the matter, a strong case for its exercise is made by the motion. The question really is, whether, under section 970 of Kirby's Digest, there is a discretion to apportion the costs where a judgment of the circuit court is in a material part reversed. The section reads as follows: "If any person shall sue out a writ of error or take an appeal to review the judgment of any circuit court, and the judgment of such court shall be affirmed, or the writ of error or appeal

dismissed, discontinued or quashed, or the plaintiff in error, or appellant, be non-suited, the defendant in error, or appellee, shall recover his costs; and if the judgment be reversed, the plaintiff in error, or appellant, shall recover his costs." Recently, in construing this section, the court said: "On appeals from judgment at law it is obligatory on this court to follow the statute." *American Soda Fountain Co.* v. *Battle,* 85 Ark. 213.

This seems to be the only direct construction of this statute. *Malpas* v. *Lowenstein,* 46 Ark. 552, is closely analogous. It arose under another section of the same act (the act of March 3, 1838), and the court said: "The issue raised by the pleadings in the main action was, debt or no debt, at the commencement of the suit. That issue the jury determined in favor of the defendant, and their verdict was approved by the trial court. This carried the costs of the ancillary attachment, as well as of the action. The burden of costs was not subject to be adjusted according to the discretion of the presiding judge, as in equity cases. But the statute provides that, when final judgment goes against the plaintiff, the defendant shall recover costs, and the attachment shall be discharged. Mansf. Digest, § § 1043, 378."

So far as the court has been able to ascertain, it has been the uniform practice of this court to adjudge all the costs of the appeal from the circuit court against the appellee where the appellant succeeds in obtaining any substantial or material reversal of the judgment. There are a few cases to be found where the court has decided that they did not fall within the statute, and has refused costs to the appellant where there has been a partial reversal. These have been cases that stood upon their own peculiar facts, taking them without the statute; but they all contain recognition of the general practice which prevailed. *Ozark Ins. Co.* v. *Leatherwood,* 79 Ark. 252, is such a case.

Notwithstanding the settled practice, the appellee insists that the court has discretion in the matter, and should exercise it here. Numerous cases are cited where the court has disallowed the costs of the appeal for defects in the abstract and brief or transcript; but these cases all depended upon the rules of the court, and not upon the statute, and afford no analogy in prac-

tice or principle to the question at bar. Appellee also cites *Davies v. Robinson*, 65 Ark. 219, and *Meadows v. Rogers*, 17 Ark. 361. But these cases go to the right of the circuit court to disallow unreasonable or unnecessary costs, which is also based upon another principle.

The only other authorities cited are 5 Enc. Plead. & Prac. 192, and *Ayers v. Western Railroad Corp.*, 49 N. Y. 660, and *Sugar Pine Lumber Co. v. Garrett*, 42 Pac. 129 (28 Ore. 168).

The Encyclopedia says that the discretion of the appellate court in adjudging costs is absolute except in so far as may be limited by statute. *Ayers v. Western Railroad Corp.*, 49 N. Y. 660, is a mere memorandum decision, apportioning costs without giving a reason therefor. But when the New York statute is looked to, the reason is found. It was held in *Chipman v. Montgomery*, 63 N. Y. 221, that where the statute did not permit discretion in the appellate court the right of the prevailing party to recover costs was absolute, but that the Code had provided a certain class of actions wherein the court was given discretion to apportion them.

In *Sugar Pine Lumber Co. v. Garrett*, 42 Pac. 129, 28 Ore. 168, the costs were apportioned because the statute permitted it. The Oregon statute on this subject reads as follows: "But when on an appeal to the supreme or circuit court a new trial is ordered, or a decision given modifying the judgment appealed from, the costs on appeal shall be allowed or not, in the discretion of the appellate court." Hill's Ann. Laws of Ore., 552. It is thus seen that none of these authorities sustain appellee's contentions. On the other hand, there are authorities sustaining *American Soda Fountain Co. v. Battle, supra.* In Wisconsin the statute provides that the prevailing party is entitled to the costs, and it is held that the statute is mandatory, and leaves no discretion in the appellate court. *Smith v. Wait*, 39 Wis. 512; *First National Bank v. Prescott*, 27 Wis. 616.

In Illinois it was held, where the statute expressly gives costs, and the case does not fall within a class where the statute authorizes apportionment, that it was error to apportion the costs. *St. Charles v. O'Mailey*, 18 Ill. 407. This is the rule in New York under a similar statute. *Chipman v. Montgomery*, 63 N. Y. 221.

The reason for these decisions is plain: The right to recover costs did not exist at common law, but rests upon statute only. *Wilson* v. *Fussell,* 60 Ark. 194; *State* v. *Gowen,* 12 Ark. 62. Therefore the statute must be pursued because it is the only guide which the court has, as it has no inherent right to award or apportion costs.

The rule is different in equity, because it has always been a principle of equity jurisprudence that the disposition of costs was in the discretion of the chancellor. *State* v. *Fort,* 18 Ark. 202; *Temple* v. *Lawson,* 19 Ark. 148; *Jones* v. *Graham,* 36 Ark. 383. And it will be noticed that the statute in question does not reach to appeals from the chancery court, but is limited to appeals and writs of error from the circuit court.

The court concludes that the practice of this court has been the right practice under the statute, and declines to deviate from it.

The motion is overruled.

Mr. Justice WOOD dissents.