LEWELLING *v.* MANSFIELD SCHOOL DIST. No. 76

5-3789                                         398 S. W. 2d 665

Opinion delivered February 7, 1966

*Garner & Parker,* for appellant.

*Shaw, Jones & Shaw,* for appellee.

OSRO COBB, Justice. On July 30, 1964, the Board of Directors of the Mansfield School District No.

76, Sebastian County, Arkansas, caused to be published in the Greenwood Democrat their proposed budget of expenditures together with the tax levy for the fiscal year beginning July 1, 1965 to and including June 30, 1966. Said notice proposed a tax levy of 50 mills. An official ballot was thereafter prepared for the purpose of submitting the 50 mills school tax to the qualified electors participating in the annual school election, which was held on September 29, 1964, the last Tuesday in September, as designated by the provisions of Ark. Stat. Ann. § 80-301 (Repl. 1960).

We quote that portion of said ballot which is pertinent to the issues raised on appeal.

"Vote on Measure by placing an [x] in the square above the measure either for or against.

FOR TAX ................................................................................□

AGAINST TAX ....................................................................□

## "50 *MILLS SCHOOL TAX*

"The 50 mill tax includes (a) 21 mills for the maintenance and operation of schools: (b) 17 mills for the retirement of existing bonded indebtedness which has been previously voted and is a continuing annual tax until the bonds are paid; and (c) 12 mills will be a continuing building fund tax for five (5) years, 1965 through 1969 both inclusive, for the purpose of calling $75,000 of bonds now outstanding prior to maturity, and said building fund tax will constitute a continuing annual levy to be collected in the years specified above, with the provision that after calling $15,000.00 in bonds each year the surplus from said 12 mill building fund tax may be used for other school purposes. Surplus revenue from all building fund millage may be used for other school purposes."

It has been stipulated that the proposed 50 mills school tax carried by a vote of 367 for the tax and 307 against the tax at said election.

Appellants, as taxpayers and electors of the school district, brought a class action suit in the Circuit Court seeking to have the annual school election declared null and void because of many alleged irregularities in the conduct of the election. Appellants attacked the legal sufficiency of the election ballot as unclear and misleading. They also contended that said election should have been conducted in conformity with the provisions of Act 28 of the Extraordinary Session of the General Assembly of 1933 (Ark. Stat. Ann. § 80-1110) instead of under the provisions of Amendment 40 to our present Constitution, said amendment having been adopted on November 2, 1948.

The Circuit Court, following hearing, found against appellants as to all of their contentions and entered a judgment dismissing the cause with prejudice. The case is now before us for review.

We now discuss the three points raised by appellants on appeal.

*Point* 1. ACT 28 AS AGAINST AMENDMENT 40.

Constitutional Amendment 40 reads as follows:

"The General Assembly shall provide for the support of common schools by general law, including an annual per capita tax of one dollar, to be assessed on every male inhabitant of this State over the age of twenty-one years; and school districts are hereby authorized to levy by a vote of the qualified electors respectively thereof an annual tax for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness, the amount of such tax to be determined in the following manner:

"The Board of Directors of each school district shall prepare, approve and make public not less than sixty (60) days in advance of the annual school election a proposed budget of expenditures deemed necessary to provide for the foregoing purposes, together with a rate of tax levy sufficient to provide the funds therefor, including the rate under any continuing levy for the retirement of indebtedness. If a majority of the qualified voters in said school district voting in the annual school election shall approve the rate of tax so proposed by the Board of Directors, then the tax at the rate so approved shall be collected as provided by law. In the event a majority of said qualified electors voting in said annual school election shall disapprove the proposed rate of tax, then the tax shall be collected at the rate approved in the last preceding annual school election.

"Provided, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied."

Constitutional amendments, when duly adopted by vote of the people, become a part of our organic law and supersede all legislative enactments inconsistent therewith. "Provisions necessarily repugnant to constitutional amendment must yield thereto." *Polk County* v. *Mena Star Co.,* 175 Ark. 76, 298 S. W. 1002. See also *Priest* v. *Mack,* 194 Ark. 788, 109 S. W. 2d 665.

The record in this case reflects that appellees attempted to follow the provision of Amendment 40 in proposing their budget and tax levy, in publishing notice of same, and in preparing the ballot for the annual school election. This was mandatory. Amendment 40 embraces the same subject matter of Act 28 and supersedes said Act, and the contentions of appellants to the contrary are without merit.

*Point* 2. APPELLANTS' CONTENTIONS AS TO INSUFFICIENCY OF THE BALLOT.

Having determined that Constitutional Amendment 40, supra, was controlling as to said election, we have tested the sufficiency of the ballot in the light of the provisions of said Amendment. The principal objection raised by appellants is to the last sentence which appears on the ballot, which we quote. ''Surplus revenue from all building fund millage may be used for other school purposes.''

It will be noted that the concluding paragraph in Constitutional Amendment 40 clearly requires that all appropriations from such revenues be expended for school purposes, and the language of the ballot did not offend Amendment 40. We have carefully scrutinized all of the language appearing on the ballot and we find same sufficient in all respects for the election. Appellants' contentions as to the insufficiency of the ballot used in the election are without merit. For comparable reasoning see *Bates* v. *Orr*, 236 Ark. 499, 367 S. W. 2d 122. It will be noted from the quoted portion of the ballot that the 12 mill levy for the purpose of calling outstanding bonds is to continue for five years only, after which it will no longer be part of the district's continuing levy.

*Point* 3. APPELLANTS' CONTENTIONS AS TO IRREGULARITIES IN CONDUCT OF THE ELECTION.

The record supports appellants' contentions as to the occurrence of several irregularities involving noncompliance with statutory requirements in the conduct of this election.

(a) At the preceding annual election in 1963, a total of 602 votes were cast in this school district. Ark. Stat. Ann. § 3-810 (Repl. 1956) requires that 150 ballots be printed for each 50 electors or fraction thereof vot-

ing in the last preceding election. The statute thus required the printing of 1850 ballots for this particular election. It appears from the record that the County Board of Election Commissioners turned over to Otis Roberts, the County School Supervisor, the details of printing and distributing the ballots for this election.

Mr. Roberts ordered only 750 ballots on the anemic excuse of economy in the printing bill.

(b) In the 1963 school election, the election preceding the one here under review, Dayton and Prairie Townships cast a total of 125 votes against the 50 mills school tax, as against a total of 4 votes for the tax. It was, therefore, reasonably well known in advance of the submission of the same issue in the school election in 1964 that the voters in those townships had previously expressed disapproval of the millage increase.

Mr. Roberts, the County School Supervisor and a party interested in the election, handled the distribution of ballots to the various townships in the district, and from his inadequate original supply he provided to Dayton and Prairie Townships a significantly reduced pro rata share of the ballots for the election. The complaint alleged the delivery of only 43 ballots to the Dayton Township and 45 ballots to Prairie Township.

For many years the law in Arkansas has placed the responsibility upon the sheriff and his deputies as to the delivery of ballots for an election. Ark. Stat. Ann. § 3-813 (Repl. 1956). There is nothing in this record to indicate that the sheriff was not ready and willing to perform his duties.

The officials conducting the election in Dayton and Prairie Townships and many of the voters in such townships were understandably irritated and upset by the obvious inadequacy as to the number of ballots furnished for the election. They proceeded, however, with

considerable ingenuity to meet the situation. Mrs. John King, one of the officials at the Dayton Township, sent her husband to the Huntington Township to borrow extra blank ballots, which were obtained, and near the end of the day, the officials hand made several ballots for use of the voters and a total of 95 votes were cast in the Dayton Township. This is 14 more votes than were cast in the same township in the 1963 election. Prairie Township cast a total of 61 votes as against 58 votes in the 1963 election. All of the votes in both townships in subject election were counted as cast.

Only one man, C. L. Scott, testified that he did not get to vote for lack of ballots, and that was in Prairie Township. We assume he was a qualified elector.

Appellants urge no irregularities in connection with any of the townships in the District except Prairie and Dayton.

The irregularities of this election flowed from an unwitting or intentional disregard of our statutory provisions with reference to conducting such election.

At the outset of our discussion of applicable law, we call attention to the fact that findings of the Circuit Judge in an election contest have the force and effect of a jury in the ordinary Circuit Court case. In other words, findings of the Circuit Judge, if supported by competent and substantial evidence, will not be disturbed here. *Williams* v. *Buchanan,* 86 Ark. 259, 110 S. W. 1024; *Logan* v. *Moody,* 219 Ark. 697, 244 S. W. 2d 499; *Phillips* v. *Melton,* 222 Ark. 162, 257 S. W. 2d 931; *Baker* v. *Hedrick,* 225 Ark. 778, 285 S. W. 2d 910.

Appellants have invited our attention to *Baker* v. *Hedrick, supra.* There was a wide variety of irregularities and illegalities in the Baker case involving a local option liquor election. In that case this court quoted with approval the following test as to when an election should be set aside: "The wrong should appear to have been

clear and flagrant; and in its nature, diffusive in its influences; calculated to effect more than can be traced; and sufficiently potent to render the result really uncertain. If it be such, it defeats a free election . . If it be not so general and serious, the court cannot safely proceed beyond the exclusion of particular illegal votes, or the supply of particular legal votes rejected.''

It would have taken 61 additional votes against the increase in school tax to have changed this election. We find nothing in the record to indicate that such a large number of voters were denied an opportunity to cast their votes. We must accordingly find that the results of the election were not affected by the irregularities practiced in the conduct of the election.

We have many times held, as in *Baker* v. *Hedrick, supra,* that elections will not be invalidated for alleged wrongs committed unless said wrongs were such to render the result doubtful. In order to destroy the result of an election it must be shown that wrongs against the freedom of election have prevailed, not slightly and in individual cases, but generally and to the extent of rendering the result doubtful. *Jones* v. *Glidewell,* 53 Ark. 161, 13 S. W. 723.

We find no error in the action of the trial court, following hearing, in dismissing the complaint of appellants with prejudice.

Affirmed.