Mary Jane SMITH, Individually, and On Behalf of All other Residents of Arkansas Who Are Similarly Situated, Plaintiff,

v.

Jerome CLIMER, Clerk and Permanent Registrar of Pulaski County, Defendant.

No. LR-72-C-25.

United States District Court, E. D. Arkansas, W. D.

April 10, 1972.

Al Daniels, Little Rock, Ark., for plaintiff.

Fred Harrison, Asst. Atty. Gen., State of Arkansas, Bill Etter, Asst. Pros. Atty., Pulaski County, Little Rock, Ark., for defendant.

Before LAY, Circuit Judge, HENLEY, Chief District Judge, and EISELE, District Judge.

PER CURIAM.

This is a class action brought by Mary Jane Smith, a citizen and resident of Pulaski County, Arkansas, on behalf of herself and others similarly situated against Jerome Climer in his capacity as County Clerk and Permanent Voter Registrar of Pulaski County and as a representative of the other seventy-four County Clerks and Registrars in Arkansas, to secure an adjudication that the Arkansas durational residence requirements for voting in State and local elections appearing in Ark.Stats., Ann., section 3–707 are violative of the Fourteenth Amendment to the Constitution of the United States.

After the plaintiff was permitted by way of amendment to her complaint to sue Mr. Climer as a representative of the class consisting of all Arkansas County Clerks and Voter Registrars, notice of the pendency of the suit was given to them as provided by Rule 23(c) (2) of the Federal Rules of Civil Procedure. Within the time limited by the Court the County Clerks of Bradley, Crawford, Scott, and Sebastian Counties requested exclusion from the suit, and they will be excluded.

Plaintiff seeks both declaratory and injunctive relief. The case has been heard before a statutory court of three Judges as required by 28 U.S.C.A., section 2281.

In 1964 the people of the State of Arkansas adopted Amendment 51 to the Arkansas Constitution. That Amendment abolished the previously existing requirement of the payment of a poll tax as a qualification for voting and set up a system for the permanent registration of voters. Section 2(b) of the Amendment provides that the several County Clerks in Arkansas shall serve during their terms of office as permanent voter registrars.

The election code of Arkansas was revised extensively by Act 465 of 1969, and the provision here challenged appears as section 7 of Article 7 of that Act. The section is as follows:

"SECTION 7. QUALIFICATION OF VOTERS.—To be qualified to vote, a person shall have been a resident of the State for one (1) year, of the county for at least six (6) months, and of his precinct for at least thirty (30) days and shall have registered at least twenty (20) days immediately prior to the election and in the manner set forth in Amendment 51 to the Constitution of Arkansas."

In 1970 Congress amended the Voting Rights Act of 1965, 42 U.S.C.A., section 1973 et seq., by adopting the Voting Rights Act Amendments of 1970, Act of June 22, 1970, P.L. 91–285, 84 Stat. 314. Section 202(c) of the 1970 Act, 42 U.S.C.A., section 1973aa–1(c), provides that no otherwise qualified persons shall be denied the right to vote for President or Vice President of the United States on the basis of his having failed to comply with durational residence requirements of any State or political subdivision. And section 202(d) of that Act, 42 U.S.C.A, section 1973aa–1(d), requires the several States to provide registration machinery for qualified persons who may desire to vote for President and Vice President and who shall apply for registration not later than thirty days immediately prior to any presidential election. We take notice of the fact that Arkansas has complied with this federal requirement.

The complaint herein alleges, and we find that plaintiff is a citizen of the United States and a resident of Pulaski County, Arkansas; that she was born,

reared, and educated in Arkansas, but later moved to Tennessee where she resided until about August 1, 1971, when she returned to Arkansas to reside and work in her profession which is that of a school teacher; that in October 1971 she applied in Pulaski County for registration as a voter and was refused registration on the ground that she had not resided in the State for a year or in Pulaski County for six months, as required by section 3–707.

The suit was filed in January of this year. On March 21 the Supreme Court of the United States handed down its decision in Dunn, Governor of Tennessee v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274.[1] In that case the Court held that certain durational residence requirements for voting in Tennessee were violative of the Fourteenth Amendment. And it follows automatically that as far as Arkansas is concerned at least the requirements of one year's residence in State and at least six months' residence in the county appearing in section 3–707 are unconstitutional and can no longer be enforced. Further, the 30-day "within precinct" residence requirement is at least suspect. However, that particular requirement has not been attacked in this case.

What has just been said would normally be sufficient to dispose of the case. However, there are complicating factors with which we feel that we should deal to some extent at least as far as the 1972 primary and general elections are concerned. We speak now of the existence of the 30-day "within precinct" residential requirement read in connection with the 20-day registration provision of the statute.

In section III of the opinion in Dunn the Court recognized that as an administrative measure or as a measure to prevent fraud a State may have a compelling and legitimate interest in providing for a closing of voter registration books a reasonable time in advance of an election. The Court said: ". . . Fixing a constitutionally acceptable period is surely a matter of degree. It is sufficient to note here that 30 days appears to be an ample period of time for the State to complete whatever administrative tasks are necessary to prevent fraud —and a year, or three months, too much." (92 S.Ct. p. 1006.)

The 20 day registration period prescribed by section 3–707 presupposed the validity of all of the durational residence requirements that it made. That presupposition is no longer valid. It has been observed that the 30 day "within precinct" requirement is not under attack here, and we think that a strong showing has been made that it should not be scrapped with respect to this year. We think also that a strong showing could be made that Arkansas registrars should be permitted to close their books longer than 20 days before an election.

As far as this year is concerned, preferential primaries will be held on May 30 and the general primaries will be held two weeks later. The registration books will close on May 10 which is only about a month off. Additionally, the membership of the Arkansas Legislature has been reapportioned recently, and the reapportionment was not approved judicially at the district court level until early March. Kelly v. Bumpers, Governor, E.D.Ark., 1972, 340 F.Supp. 568. The imminence of the primaries and

---

1. On April 4, 1972, the Supreme Court likewise held residency requirements ranging from three months to a year to be unconstitutional in the States of Arizona, Massachusetts, Indiana, Alabama, Virginia, Minnesota, Vermont, Illinois, and North Carolina. Cocanowner v. Marston, 405 U.S. 1036, 92 S.Ct. 1303, 31 L.Ed.2d 575; Canniffe v. Burg, 405 U.S. 1034, 92 S.Ct. 1303, 31 L.Ed.2d 575; Whitcomb v. Affeldt, 404 U.S. 576, 92 S.Ct. 1304, 31 L.Ed.2d 576; Amos v. Hadnott, 405 U.S.

1035, 92 S.Ct. 1304, 31 L.Ed.2d 576; Virginia State Board of Elections v. Bufford, 405 U.S. 1035, 92 S.Ct. 1304, 31 L.Ed.2d 576; Donovan v. Keppel, 404 U.S. 576, 92 S.Ct. 1304, 31 L.Ed.2d 576; Davis v. Kohn, 404 U.S. 576, 92 S.Ct. 1305, 31 L.Ed.2d 576; Fitzpatrick v. Board of Election Comrs. of City of Chicago, 405 U.S. 1036, 92 S.Ct. 1305, 31 L.Ed.2d 575; Cody v. Andrews, 405 U.S. 1034, 92 S.Ct. 1306, 31 L.Ed.2d 576. See 40 L.W. 3479.

problems incident to legislative reapportionment could give very serious problems to registrars if they are required to register voters without regard to any durational residence requirement whatever.

Further, in view of the 1970 federal statute which has been mentioned, it might be possible for an individual newly moved to Arkansas and who might be inclined to cast two votes in the presidential election to do so by casting an absentee ballot in the State of his original residence and then registering to vote in the Arkansas general election within the period prescribed by the Arkansas statute.

■ We repeat, therefore, that Arkansas County Clerks are not restrained from enforcing the 30 day "within precinct" residence requirement with respect to this year's elections. We emphasize that we are not in this case upholding the constitutionality of any durational requirement as such.

As to future elections, the Legislature meets in regular session in January 1973 and it may feel that the 20 day registration period is too short in view of the elimination of at least the "within State" and "within county" residence requirements, and it may want to lengthen the period between the closing of the books and election day. That is up to the Legislature, and it would be premature, of course, for us to express any opinion as to the validity of any action that the Legislature may choose to take. We simply desire to emphasize that the "within State" and "within county" residence requirements can be enforced no longer, and that the 30 day "within precinct" requirement may be in jeopardy after this year.

A decree in accordance with the foregoing will be entered. Copies of this opinion and of the decree are to be furnished to the members of the Arkansas State Election Commission and to all of the County Clerks in Arkansas, including the four who will not be bound formally by the decree.