Louis E. MEYERS, Individually, and on behalf of all other residents of Arkansas who are similarly situated, Plaintiffs,

v.

Charles JACKSON, Clerk and Permanent Registrar of Pulaski County, Individually and on behalf of all other persons in the State of Arkansas who are County Clerks and Permanent Registrars, Defendants.

No. LR–74–C–320.

United States District Court,
E. D. Arkansas, W. D.

Feb. 24, 1975.

Thomas A. Glaze, Little Rock, Ark., for plaintiffs.

Tom Tanner, Deputy Pros. Atty., Little Rock, Ark., for defendants.

Before WEBSTER, Circuit Judge, and HENLEY and EISELE, District Judges.

## MEMORANDUM OPINION

This clause, in which a District Court of three Judges has been empaneled, is now before the Court on the motion of plaintiff for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

### I.

Plaintiff is an adult citizen of Pulaski County, Arkansas; defendant is the County Clerk and ex officio Permanent Voter Registrar of Pulaski County. Plaintiff sues on his own behalf and on behalf of all other citizens of Arkansas similarly situated. The defendant is sued in his own official capacity and also as representative of a class consisting of the seventy-four other County Clerks and ex officio Voter Registrars in the State of Arkansas.

Plaintiff attacks the "within precinct" durational residency requirement for voters appearing in Amendment 8 to the Constitution of the State of Arkansas and in Ark.Stats., Ann., Cum.Supp., § 3–707, on the ground that those provisions are violative of the Fourteenth Amendment to the Constitution of the United States. Both declaratory and injunctive relief is sought.

Insofar as is here pertinent, Amendment 8 to the Arkansas Constitution, as amended by section 17 of Amendment 51, which was adopted by the voters of

Arkansas in 1964 and which sets up a system of permanent registration for Arkansas voters, provides that any person is eligible to vote in this State if, among other things unnecessary to be mentioned here, he or she has resided in the State for twelve months, in his or her County for six months, and in his or her ward or voting precinct for thirty days.

Ark.Stats., Ann., Cum.Supp., § 3–707, which is Article 7, Section 7 of the Arkansas Election Code of 1969, Act 465 of 1969, provides that a qualified voter must have been a resident of the State for one year, of his or her County for at least six months, and of his or her voting precinct for at least thirty days, and must have registered in the precinct in which he or she resides and desires to vote for at least twenty days immediately prior to the election and in the manner set forth by Amendment 51.

Section 9 of Amendment 51 is in part as follows:

"(a) All persons may register who:
"(1) are qualified electors and who have not previously registered;
"(2) will become qualified electors during the twenty (20) day period immediately prior to the next election scheduled within the county; or
"(3) are qualified electors but whose registration has been cancelled or is subject to cancellation in a manner provided for by this amendment.
"(b) Registration shall be in progress at all times except during the last twenty (20) day period immediately prior to any election scheduled within the county, during which period registration of voters shall cease for that election, but registration during such period shall be effective for subsequent elections."

The record reflects that plaintiff has been a qualified elector of Pulaski County for many years and was duly registered to vote in the precinct of his residence until he moved from it to another precinct in Pulaski County on October 15, 1974. Plaintiff undertook to register in his new precinct for the purpose of voting in the General Election to be held on November 5, 1974 and was refused registration solely on the basis that he had not resided in the new precinct for at least thirty days prior to the election. We observe that plaintiff made his move into his new precinct more than twenty days prior to the election, and had he lived in that precinct for at least thirty days he would have been eligible for registration to vote in the November election. Thus, he was refused registration solely on the basis of the "within precinct" durational residency requirement that has been mentioned.

We might say at this point that this case is the lineal descendant of Smith v. Climer, Circuit Clerk and Permanent Voter Registrar of Pulaski County, Arkansas, E.D., Ark., 1972, 341 F.Supp. 123. In that case a statutory court held that the "within State" and "within County" durational residency requirements of Amendment 8 and Ark.Stats., Ann., § 3–707 were unconstitutional. However, the plaintiff in that case met the within precinct requirement, and the court had no occasion to rule on the constitutional validity of that particular requirement, which is the one challenged here.[1]

## II.

Before going further, we think it desirable to comment in some detail on the procedural history of the case.

Plaintiff filed his complaint on October 16, 1974 immediately after he had been refused registration. He moved for a temporary restraining order, and the application was heard on October 24 by the single District Judge to whom the case had been assigned originally. 28 U.S.C.A. § 2284(5). On October 25

---

1. There was no appeal from the decision in Smith v. Climer, supra.

that Judge entered an order granting temporary relief which enabled the plaintiff to mark and cast a ballot in the November, 1974 election.

On November 14, 1974 the Judge addressed a letter to counsel, a copy of which was filed with the Clerk as an Order. In that letter the plaintiff was granted permission to prosecute the suit as a class action, and it was directed that notice of the pendency of the action be given as provided by Rule 23 of the Federal Rules of Civil Procedure. Notice was given, and twenty-three of the seventy-five Voter Registrars in Arkansas asked to be disassociated from the case; their requests were duly granted.

In the fifth numbered paragraph of the Order of November 14 it was stated:

"5. While it may not be strictly the concern of this Court, I might point out that in *Climer*, supra, certain durational residency requirements of the Arkansas election laws were stricken down. That case was decided in 1972, and the Court pointed out that the Legislature was due to meet in 1973 and might desire to make some changes in the laws. As far as I know, the Legislature did not do so. If as a result of this suit the remaining durational residency requirement is held unconstitutional, there may be more urgent need for legislative action. For that reason I hope that the submission of the case can be expedited so that the Legislature which convenes in January, 1975 may take such action, if any, as seems to be indicated."

On November 20, 1974 Registrar Jackson filed his answer to the complaint, and in a letter to the Court requested an evidentiary hearing "for the purpose of allowing the defendant to testify as to the mechanics of his office which would establish the reasonableness of the thirty day residency requirement in the election code." And counsel concurred with the single Judge that early disposition of the case was desirable because of the imminence of the next regular session of the Legislature.[2]

The single Judge on November 25, 1974 entered another Order. In that Order note was taken of the defendant, Jackson's, request for an evidentiary hearing and of his expressed desire to testify. The Order, after referring to the defendant's desire and request, recited:

" . . . It occurs to the writer that Mr. Jackson may submit an affidavit setting out those mechanics (of voter registration) and stating his views, or that his deposition may be taken and filed. If counsel for Mr. Jackson has any serious trouble with the writer's suggestion, the writer should be advised."

The Judge then called for the filing of simultaneous pretrial briefs by December 9 and gave either side leave to file a reply brief if it desired to do so, and leave was also granted to the parties to request oral argument, if desired.

On December 9 counsel for plaintiff filed the motion for summary judgment that is now before the Court and supported it with a memorandum brief.

Counsel for the defendant did not file a formal response to the motion and has submitted no brief. On December 13 Mr. Jackson filed a long affidavit with attached appendix explaining in detail registration procedures, including procedures for changing and cancelling registrations, that are followed in Pulaski County, which is the State's most populous County, and setting out the problems and difficulties that he claims would be encountered should the within precinct residency requirement be eliminated.

A few days later counsel for plaintiff filed a motion to strike the affidavit as being irrelevant and immaterial. On January 7, 1975, the single Judge filed still another Order which, among other things, overruled plaintiff's motion to

2. The Legislature in fact convened on January 14, 1975 and is now in session.

strike the Jackson affidavit and appendix. The Order recited:

"The motion to strike the affidavit will be, and is hereby, overruled. The Court will consider the affidavit for what it is worth, if anything, in determining whether the case presents any genuine issue as to any material fact which would render summary judgment inappropriate. If defendant Jackson has anything further of a documentary nature, including any brief, to submit in opposition to the motion, he should file the same within one week from this date, after which the motion will be taken under consideration.

"If the Court concludes that the case presents no genuine issue as to any material fact and that plaintiff is entitled to judgment as a matter of law, summary judgment will be entered. Otherwise the motion will be denied, and the case set down for such other and further proceedings as may appear necessary.

"3. The writer notes the statement in defendant Jackson's affidavit to the effect that he has been 'denied' an evidentiary hearing; that statement is incorrect; he has never been denied a hearing, and one may be necessary if the motion for summary judgment is denied."

Mr. Jackson submitted no additional material within the period prescribed in the Order of January 7 and has not advised the Court or the single Judge that he has any additional material to submit.

We, therefore, are of the view that present consideration of the motion for summary judgment is proper.

### III.

The within precinct residency requirement of Amendment 8 and Ark.Stats., Ann., Cum.Supp., § 3–707 is separate and distinct from the twenty day pre-election registration requirement set out in section 3–707 and in section 9(b) of Amendment 51. The difference between the two requirements was noted by the *Climer* court, Smith v. Climer, supra.

As indicated, the court in that case did not reach the question of the validity of the within precinct residency requirement since it was not under attack. However, the Court said that in view of the decisions of the Supreme Court in Dunn v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 and related cases, "the 30-day 'within precinct' residency requirement is at least suspect." (341 F.Supp. at 125). The Court felt that the within precinct residency requirement should be read in connection with the twenty day registration requirement, suggested that the latter requirement was probably valid as an administrative measure, and, indeed, suggested further that Voter Registrars in Arkansas may actually need to close their registration books somewhat more than twenty days in advance of an election. Ibid.

The Court in *Climer* was concerned primarily with the registration of persons who desired to vote in the primary and general elections to be held in 1972. On account of certain circumstances that need not be detailed here, the Court concluded that registering officials in Arkansas should be permitted with respect to those elections to enforce both the thirty day within precinct residency requirement and the twenty day pre-election registration requirement. However, the Court was careful to point out that it was not upholding the within precinct requirement or any other durational residency requirement. (Smith v. Climer, supra, 341 F.Supp. at 125–126).

### IV.

Turning now to the merits, we first look at the Jackson affidavit and the appendix thereto, although we find it unnecessary to abstract them in detail. While we think that the affiant perhaps exaggerates his problems to some extent and that the problems encountered by registration personnel in Pulaski County are in all probability more numerous and severe than those encountered in

less populous counties, we accept generally as true the statements of the affiant and the accuracy of the figures contained in the appendix to the affidavit.

However, it seems to us that the affiant overlooks the distinction just drawn by us between the thirty day within precinct *residency* requirement and the twenty day *registration* requirement, and that what the affidavit and appendix actually establish is that Voter Registrars in Pulaski, and probably in other Arkansas counties as well, need to be able to "close· their books" as far as an approaching election is concerned more than twenty days before the date of that election,[3] as suggested in *Climer*, supra. And it seems fairly inferable that what Registrar Jackson and perhaps other Registrars in the State are doing is using the thirty day within precinct residency requirement as a supplement to the twenty day registration requirement so that they will have ten more days before an election to process registrations of new voters and to recognize changes in the residences of formerly registered voters who have moved from one precinct to another.[4]

That, however, they cannot do validly unless the within precinct residency requirement is valid in itself. Hence, there recurs the question of the validity of that requirement as a matter of law.

■ We readily grant to the defendant and to the class whom he represents

that the State may constitutionally require a voter to register to vote in a given precinct a reasonable time in advance of an election in which he desires to vote and that he be a resident of the precinct when he registers. Marston v. Lewis, 1973, 410 U.S. 679, 93 S.Ct. 1211, 35 L. Ed.2d 627; Dunn v. Blumstein, supra. In *Marston* it was said (410 U.S. at 680, 93 S.Ct. at 1212):

"In Dunn v. Blumstein, we struck down Tennessee's durational voter residency requirement of one year in the State and three months in the county. We recognized that a person does not have a federal constitutional right to walk up to a voting place on election day and demand a ballot. States have valid and sufficient interests in providing for *some* period of time—prior to an election—in order to prepare adequate voter records and protect its electoral processes from possible frauds. A year, or even three months, was found too long, particularly in the context of 'the judgment of the Tennessee lawmakers,' who had set 'the cutoff point for registration [at] 30 days before an election . . . .' 405 U.S., at 349, 92 S.Ct. [995] at 1006."

A majority of the Court then went on to uphold a fifty day durational residency requirement of Arizona where fifty days before an election was also the deadline for registration by one who wanted to vote in that election. The

---

3. We desire to make it clear that when we use the term "close their books" we are referring to "closing the books" only as far as voting in the next approaching election is concerned. Actually, the "books" are never "closed" as far as initial registration steps are concerned. If an otherwise qualified elector moves to a new precinct and presents himself for registration therein within the twenty day period prescribed by existing law, he is permitted to execute the initial documentation required for registration by Amendment 51; the registration officials are simply not required immediately to take the additional steps, which are somewhat time consuming, particularly in a large county, that would enable the registrant to vote in the

imminent election; he will be able to vote on the basis of that registration in subsequent elections.

4. It may be noted that four County Clerks requested to be excluded from Smith v. Climer, supra, 341 F.Supp. at 124. Two of those same Clerks and twenty-one others have asked to be excluded from this case. The larger number of requests for exclusion suggests that at least a substantial number of the seventy-five County Clerks in Arkansas attach more practical significance to the within precinct residency requirement in question than they did to the within State and within County requirements involved in the earlier case.

same result was reached in Burns v. Fortson, 1973, 410 U.S. 686, 93 S.Ct. 1209, 35 L.Ed.2d 633 wherein a Georgia durational residency requirement of fifty days was upheld where it corresponded to the deadline for registration.

Those decisions, however, are of no help to the defendant except to the extent that they hold that Arkansas can prescribe a reasonable period of time for registering in advance of an election and can require that the registrant live in the precinct when he registers.

There is no substantial difference between the question presented here and the one presented in Fisher v. Herseth, D.C., S.D., 1974, 374 F.Supp. 745, and Hinnant v. Sebesta, N.D., Fla., 1973, 363 F.Supp. 398. In both cases within precinct residency requirements in excess of pre-election registration requirements were held to be unconstitutional. In the Florida case the residency requirement was sixty days preceding the election, and the other requirement was that a voter must have registered at least thirty days prior to the election. The South Dakota case involved the following residency requirements: within the United States, five years, within the State one hundred eighty days, within the County ninety days, and within the voting precinct thirty days. South Dakota, like Arkansas, allowed otherwise qualified voters to register as late as twenty days before an election in which they wished to vote. It was held that all of the durational residency requirements were unconstitutional.[5]

Entirely apart from the precedents from Florida and South Dakota just discussed, we are satisfied that the within precinct residency requirement with which we are concerned, in contrast to the twenty day pre-election registration requirement which is not attacked here, is unconstitutional. We find that it is not necessary to promote any compelling State interest, that it unreasonably restricts the exercise of the right of suffrage, that it unreasonably restricts the freedom of people to move from one place to another, and that it is invidiously discriminatory.

While the term "voting precinct" is not new to the election laws of Arkansas, "voting precincts" as they exist today in this State, particularly in the more populous Counties and Cities, are creatures of the Election Code of 1969.

A present day voting precinct, while it may be called a "political subdivision," is not such a subdivision in the sense that counties, cities, towns, political townships and other geographical areas that could be mentioned are political subdivisions. People do not run for office on the basis of voting precincts as they exist today nor do they vote on initiated or referred constitutional amendments or legislative measures on the basis of "voting precincts." Where two or more voting precincts are located within the same conventional political subdivision, the ballots that are marked by the voters are identical in all of the precincts. For example, the plaintiffs in this case moved from Precinct 90 to Precinct 88 in Pulaski County, and was permitted under the temporary order of the single Judge to vote on the very same candidates and on the very same measures on whom and on which he would have voted had he remained in Precinct 90.

A voting precinct in Arkansas is now nothing more than a geographical area wherein people who live in that area cast their ballots and where those ballots

5. In *Fisher* District Judge Bogue took the view that the unconstitutionality of the South Dakota requirements was so patent that the convening of a three Judge court was unnecessary. In *Hinnant* District Judge Hodges took the same position and decided the case without convening a statutory court. Hinnant v. Sebesta, M.D., Fla., 1972, 346 F.Supp. 913. There was an appeal, and the Court of Appeals directed that a three Judge court be convened. Fair and Hinnant v. Sebesta, 5 Cir., 1973, 475 F.2d 1140. The decision in the Florida case cited in the text hereof is that of the statutory court. As far as we have ascertained, there was no appeal from either that decision or from the decision of Judge Bogue in the South Dakota case.

are counted and the results reported to more central authorities. Obviously, such precincts are useful tools in the conducting of convenient and efficient elections, and we certainly do not suggest that they are either illegal or undesirable. But they serve no political purpose other than the administrative one just mentioned.

The within precinct residency requirement obviously discriminates between voters who move their residences across precinct lines shortly before elections and those who do not. Moreover, the requirement may discriminate as between two voters who make their moves on the same day. If a person lives in a relatively large precinct he may move a substantial distance on the day before an election without affecting his right to vote if his move does not take him out of his original precinct; but, if he moves across the street, he loses his right to vote if the street happens to be a precinct line. The State can have no conceivable legitimate interest in such a result which is both discriminatory and absurd.

■ The argument can be made that a person who moves from a precinct in one county to a precinct in another county, or from a rural precinct into an urban precinct ought to be required to reside in the new area for a substantial period of time, say thirty days, before being permitted to vote in it. It is clear, however, that such an argument is based upon the fact that the individual in question has moved from county to county or from country to town, and not that he has moved from precinct to precinct. And it now seems clear that durational residency requirements of any kind cannot be upheld constitutionally, except to the extent that they are realistically related to reasonable registration requirements.

■ But whatever weight, if any, such an argument might have today is lost in this case because the requirement in question is not limited to persons who move from one true political subdivision to another; it is applicable to any voter who makes a move, however short, that takes him across a precinct line within thirty days of an election. Thus, the requirement is overbroad, if nothing else.

Finally, at least from a legal standpoint, the administrative problems postulated by the defendant arise from the registration period of twenty days rather than from the durational residency requirement of thirty days. While it is probably true that as a practical matter a person who moves into a new voting precinct more than thirty days before an election may be more likely to register to vote in the new precinct at least twenty days in advance of the election than an individual who moves into the precinct less than thirty but more than twenty days before the election, that is not necessarily true; a number of variable factors are involved. And it must be kept in mind that the time, trouble and effort to change the registration of a voter precinctwise is not affected in any way by the length of time that he has lived in the precinct. If A. moves into a new precinct forty days before an election and B. moves into the same precinct twenty-five days before the same election, and both present themselves for registration twenty-one days before the election, it takes just as much time and trouble to change the registration of one as it does the registration of the other.

## V.

■ We conclude that the plaintiff is entitled for the benefit of himself and the members of the class whom he represents to a declaratory judgment to the effect that the within precinct durational residency requirement is unconstitutional and to an injunction against the defendant and other County Clerks and Voter Registrars in the State, who have not been excluded from this action, restraining them from enforcing the requirement in the future.

As to the propriety of injunctive relief, we call attention to the fact that the biennial elections for public school

directors in Arkansas will be held in March of this year, and the requirement in question is applicable to persons who would vote in those elections as well as to persons who would vote in other elections to be held in the State.

In *Climer*, supra, the Court suggested that the Legislature might desire to lengthen the pre-election registration period called for by section 9 of Amendment 51 and Ark.Stats., Ann., Cum. Supp., § 3–707, and we might renew that suggestion. While the Legislature ordinarily has no power to amend the Arkansas Constitution or an amendment thereto, it is to be observed that section 19 of Amendment 51 expressly authorizes the Legislature to amend sections 5 through 15 of the Amendment "in the same manner as required for amendment of laws initiated by the people," provided that the amendments "are germane to this amendment, and consistent with its policy and purpose." It would thus appear that the way is open for a legislative amendment to section 9 if the Legislature cares to adopt an amendment.

In conclusion we note that on January 8, 1975 counsel for plaintiff informally supplemented his motion for summary judgment with a request for an award of costs and an attorney's fee. We doubt that such an award could legally be paid out of public funds, and we are not willing to tax defendant Jackson or the members of the class represented by him with the costs of the action or with a fee. There is nothing in this record to suggest that the defendant or other County Clerks in the State have acted obstinately or in bad faith in present context; they have simply been carrying out the law as written into the Constitution of Arkansas and into the Arkansas Election Code. While they were perhaps on notice from the holding in *Climer* that when attacked the within precinct requirement would probably be held unconstitutional, they had no power to repeal the requirement, and we do not think that when sued they were required to accede to the position of the plaintiff without a fight on pain of being held liable personally for an attorney's fee and costs should they lose the case.