The Honorable Jim Lancaster State Representative Route 6, Box 520 Sheridan, Arkansas 72150
Dear Representative Lancaster:
This is in response to your request for an opinion on whether the recent adoption of "Amendment 1" to the Arkansas Constitution (concerning school finance) would render constitutional a proposed bill to eliminate the necessity of an annual school election in years in which there are no challenged candidates for board positions and no other ballot issues to be decided in a particular school district. You note that in 1995, you sponsored legislation (now codified at A.C.A. § 6-14-102 (Supp. 1995)), which allows the annual school election date to be moved to coincide with the general election where there are no challenged school board members up for election or other ballot issues to be decided. You state that the legislation you ultimately favor would not just move the date of the annual school election under such circumstances, but would authorize its cancellation. An Attorney General's opinion issued by a previous administration, however (Op. Att'y Gen. 87-067), concludes that such a bill would be unconstitutional under Arkansas Constitution, art. 14, § 3
which refers to an "annual school election," and which requires the submission of a proposed rate of tax to the electors each year at that election. Your question is whether the recent adoption of Amendment 1 changes this result.
The answer to your question is not altogether clear under the new language of art. 14, § 3 (as amended by Amendment 1). In all likelihood, however, in my opinion, the annual school election requirement may only be dispensed with in those districts which choose to levy only the uniform minimum millage rate (25 mills) and which do not seek to levy any additional annual tax rate for maintenance and operation. In my opinion newly enacted Amendment 1 does not do away with the necessity of submitting any additional annual proposed rate of tax for the "maintenance and operation of schools and the retirement of indebtedness" to the voters each year.
The former language of Arkansas Constitution, art. 14, § 3, upon which the conclusion in Op. Att'y Gen. 87-067 was based, reads as follows:
 The Board of Directors of each school district shall prepare, approve and make public not less than sixty (60) days in advance of the annual school election a proposed budget of expenditures deemed necessary to provide for the foregoing purposes, together with a rate of tax levy sufficient to provide the funds therefor including the rate under any continuing levy for the retirement of indebtedness. If a majority of the qualified voters in said school district voting in the annual school election shall approve the rate of tax so proposed by the Board of Directors, then the tax at the rate so approved shall be collected as provided by law. In the event a majority of said qualified electors voting in said annual school election shall disapprove the proposed rate of tax, then the tax shall be collected at the rate approved in the last preceding annual school election.
Arkansas Constitution, art. 14, § 3, as amended by Amendments 11 and 40.
It was concluded in Op. Att'y Gen. 87-067 that: "Amendment 40 quite clearly contemplates an annual school election for the purposes provided therein. Hence, any attempt to provide by statute for the nonoccurrence of an event which the Constitution mandates would be impermissible." Id.
at 2.
The conclusion reached in Op. Att'y Gen. 87-067 is not entirely correct, in my view, however, because the levy of a tax by the electors under art. 14, § 3, even as that section read prior to the adoption of Amendment 1, is permissive, rather than mandatory. The former introductory paragraph of art. 14, § 3, not quoted in Op. Att'y Gen. 87-067, began:
 The General Assembly shall provide for the support of common schools by general law . . . and school districts are hereby authorized to levy by a vote of the qualified electors respectively thereof an annual tax for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness, the amount of such tax to be determined in the following manner: [The Board of Directors shall . . .]
Arkansas Constitution, art. 14, § 3, as amended by Amendments 11 and 40.
As can be seen from the former language above, school districts were "authorized" to levy an "annual tax" for support of the schools, in addition to any amounts provided by the general assembly. The levy of such a tax was not constitutionally mandated, and consequently neither was an election to levy it. Any such tax levied, however, was an "annual tax."[1] The word "annual" implies that the tax must be levied annually to be effective. See Webster's Seventh New Collegiate Dictionary (1972) (defining "annual" to mean "covering the period of a year," "occurring or performed once a year," "an event that occurs yearly," "something that lasts one year or season.") Id. at 36. Strictly speaking, therefore, an annual school election for taxation purposes was not mandated by the language of art. 14, § 3.[2] It was up to the school districts to decide whether to levy any tax at the annual school election each year for the purposes listed in art. 14, § 3. If a particular district did levy any such tax, however, it was only an "annual tax," with a new proposed rate of tax to be submitted each year. If the voters approved the new rate of tax, it was levied and collected. If the voters disapproved the new rate of tax, however, the rate approved at the last precedingschool election was the rate collected. This latter provision seems to cut against the "annual" nature of the tax, as it provides for continuing applicability of a tax approved in one year for another year, even though the electorate took no action to re-authorize it. It appears from a reading of former article 14, § 3, however, that the formality of submitting even the same proposed rate of tax at the annual school election had to be observed as a necessary prerequisite to the previous year's tax being applicable. The Arkansas Supreme Court has seen fit to construe the former language of article 14, § 3 strictly. See Op. Att'y Gen. 94-258 and Lewelling v. Mansfield School District, 240 Ark. 237,398 S.W.2d 665 (1966). Thus, the ultimate conclusion of Op. Att'y Gen. 87-067 is correct. In order for any rate of tax to be levied by the district, some rate of tax had to be proposed at the annual school election. If it was disapproved, last year's rate was levied. If no rate was submitted at all, however, the rate of tax would have been zero, as the previous year's tax was only an "annual" tax.
"Amendment 1," adopted at the November 1996 general election, substantially reworded article 14, § 3. It adds new portions levying a uniform minimum millage rate of twenty-five mills in each district (whether approved by the voters of each district or not), and details the method of collection and disbursement of the resulting sums. Much of the former language set out above regarding an annual tax levied by the voters was retained, but now follows, and is supplemental to, the language regarding the uniform minimum levy. The relevant portion of art. 14, § 3 now reads as follows:
 In addition to the uniform rate of tax provided in subsection (b),
school districts are authorized to levy, by a vote of the qualified electors respectively thereof, an annual ad valorem property tax on the assessed value of taxable real, personal, and utility property for the maintenance and operation of schools and the retirement of indebtedness. The Board of Directors of each school district shall prepare, approve and make public not less than sixty (60) days in advance of the annual school election a proposed budget of expenditures deemed necessary to provide for the foregoing purposes, together with a rate of tax levy sufficient to provide the funds therefor, including the rate under any continuing levy for the retirement of indebtedness. The Board of Directors shall submit the tax at the annual school election or at such other time as may be provided by law. If a majority of the qualified voters in the school district voting in the school election approve the rate of tax proposed by the Board of Directors, then the tax at the rate approved shall be collected as provided by law. In the event a majority of the qualified electors voting in the school election disapprove the proposed rate of tax, then the tax shall be collected at the rate approved in the last preceding school election. However, if the rate last approved has been modified pursuant to subsection (b) or (c)(2) of this section, then the tax shall be collected at the modified rate until another rate is approved.
 Arkansas Constitution, art. 14, § 3, as amended by Amendments 11, 40, and Amendment 1 of 1995. (Emphasis added.)
The entire subsection in which this language appears is now drafted as supplemental to the uniform minimum rate. That is, school districts are "authorized" to levy an annual tax or millage in addition to the uniform rate, but are not required to do so. It appears, at the least, that a district levying only the uniform minimum millage rate of twenty-five mills is under no obligation to annually submit to the electors the uniform rate of tax, or any amount in addition to the minimum amount. In those school districts, at least, an annual school election for taxation purposes is not required by the new language of article 14, § 3.
The new language, however, also retains the reference to any additional tax levy as an "annual tax." If any additional tax is levied in the district, therefore, it is levied for only one year, and the constitution still requires a new levy to be presented to the voters for approval or disapproval the following year. It is true that if the voters of a district disapprove a newly submitted levy, the rate to be collected is the rate levied at the preceding school election. As with the former language, however, it appears that the formality of submitting even the same rate as the preceding year must be observed in order for it to be retained. If no rate is proposed to the voters at all, and no annual school election is held, the school district would have proposed no annual tax in addition to the uniform rate, and the millage rate would, by virtue of Amendment 1, be only twenty-five mills.
An argument might be made to the contrary in light of the newly added language which states that the tax shall be submitted "at the annual school election or at such other time as may be provided by law." It can be argued that this phrase would authorize the legislature to provide for the tax to be submitted at the annual school election only when a change in the tax rate is sought. That is, the "time" for submission of the tax would be only in those years in which a change in the tax is proposed. The subsequent language of article 14, § 3 seems to cut against this argument. It provides for the levy and collection of a previous year's approved tax rate only upon the disapproval of some rate of tax in the current year.
It is therefore my opinion that Amendment 1 does not authorize dispensing with the annual school election in those district which seek to levy more than the twenty-five mill minimum.
I should note, however, that it is difficult to analyze the constitutionality of a hypothetical bill. Any such bill, if enacted into law, would be accorded every presumption in favor of its constitutionality. Dougan v. State, 322 Ark. 384, 912 S.W.2d 400 (1995). Nonetheless, in my opinion, the language of Amendment 1 is simply not clear enough for districts to forego the necessity of an annual school election when they seek to retain a millage rate for maintenance and operation in excess of the twenty-five mill minimum. Sound public policy may be to the contrary, but the language of our constitution may not be ignored. It is my duty, as far as is reasonably possible, to predict what the Arkansas Supreme Court would hold on this question. If I were to conclude that school districts around the state may forego the necessity of the annual school election in instances in which they seek to retain the same millage rate levied in the preceding year (when such rate exceeds twenty-five mills for maintenance and operation) and the Arkansas Supreme Court ultimately disagreed with my conclusion, the districts would risk losing the additional millage levy to a successful court challenge. That is, any levy in excess of the twenty-five mill minimum could be invalidated in the absence of an annual school election. The practical realities of an adverse court decision must be considered. In short, it would be a disservice to the school districts to conclude that they may save themselves the expense of the annual school election under certain circumstances, if there is a colorable risk of losing substantial tax moneys if the Arkansas Supreme Court rules to the contrary.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] An annual tax under former art. 14, § 3 was authorized for the "maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness." "Continuing" levies, however, were also authorized for the "retirement of indebtedness." See
Arkansas Constitution, art. 14, § 3, and Adams v. DeWitt Special SchoolDistrict No. 1, 214 Ark. 771, 218 S.W.2d 359 (1949). The new language of article 14, § 3 refers to an annual tax for "maintenance and operation of schools and the retirement of indebtedness," but omits any reference to the erection and equipment of school buildings. The new language also refers to "continuing" levies to retire indebtedness, which presumably refers to bonded debt. Cf. A.C.A. § 6-20-402 (Supp. 1995) and A.C.A. §§6-20-1201 to -1228 (1987 and Supp. 1995). Thus, this "continuing" type of tax levied by school electors may not technically be an "annual levy," although the subsection appears to contemplate its submission each year.
[2] Arkansas Constitution, art. 14, § 3 does not address or require an annual election for the election of school board positions. Article 14, § 4 provides that: "The supervision of public schools and the execution of the laws regulating the same shall be vested in and confided to such officers as may be provided for by the General Assembly." The General Assembly thus has ultimate authority over the procedure for elections of school district officials and there is no constitutional requirement in this regard.