The Honorable Uvalde Lindsey State Representative
2257 East Gentle Oaks Lane Fayetteville, Arkansas 72703-6142
Dear Representative Lindsey:
I am writing in response to your request for my opinion on the following two questions, which refer to a special election in the Springdale School District:
 1. During early voting in a school election, must the polls be located in the district?
 2. If an election commission did allow early voting to take place outside the district, would this have caused the election to be void?
You cite A.C.A. § 16-14-106 (sic: A.C.A. § 6-14-106 (Supp. 2009)) for the proposition that annual school elections must be held within the district; you note, however, that A.C.A. § 7-5-418 (Supp. 2009), which addresses early voting, does not expressly impose any such requirement. As regards the factual background, you report that the Washington County Election Commission (the "Commission") chose not to conduct a special election in the Benton County Clerk's offices in Rogers and Bentonville because those offices are not located within the Springdale School District.
RESPONSE
In my opinion, the Commission was correct in its decision because early voting in any school district election should be held within the district itself. However, in my opinion, assuming certain qualified voters cast their votes in a polling place *Page 2 
outside the district, those votes would clearly be valid and the election would not be void. Nevertheless, despite the strong judicial policy against voiding elections, I believe there might be a basis for a challenge based upon disenfranchisement in the highly unlikely event that the only polling site(s) were located outside of the affected district.
DISCUSSION
Section 6-14-106 of the Arkansas Code, which addresses annual school elections, provides in pertinent part:
 (a)(1) The county board of election commissioners of each county shall designate all the polling sites for each school district in its respective county, including districts having territory in more than one (1) county but which are domiciled in its county for administrative purposes, and shall provide the election supplies and appoint the poll workers for holding all school elections.
 * * * (4)(B) Each polling site for a school district's annual school election shall be located within the school district.
(Emphasis added.)
Section 7-5-418 of the Code (Supp. 2009), which deals with early voting, further provides in pertinent part:
 (b)(1)(A) The county board of election commissioners may decide to hold early voting at additional polling sites outside the offices of the county clerk on any of the days and times provided for in subsection (a) of this section, if it so chooses.
 (B) The county board of election commissioners shall determine by unanimous vote the location of additional polling sites for early voting.
 (2) The county board of election commissioners shall appoint the election officials for the additional early voting polling site or sites *Page 3 
in the same manner as election officials are appointed for election day.
 * * * (3)(B) If the county board of election commissioners decides to hold early voting at one (1) or more conveniently located polling sites on the days and times under subsection (a) of this section, the county clerk may choose not to hold early voting within the office of the county clerk. . . .
 (f) Except as provided in this section, early voting shall be conducted in the same manner as voting on election day. Conduct that is prohibited or restricted on election day shall be subject to the same prohibitions and restrictions on the days on which early voting is conducted.
(Emphasis added.)
Although the statute just excerpted contains no express directive that a polling site for early voting be located within the school district, I believe both common sense and the passage highlighted immediately above support the conclusion that early voting in a special election should be conducted in the same manner as regular annual voting — namely, at a polling place in the district affected.[1]
Moreover, as one of my predecessors noted in Op. Att'y Gen. No. 89-097:
 [I]f an administrative agency . . . adheres to a certain interpretation of a statute under which it operates, that interpretation will be given some weight by the courts. The principle is enunciated in 73 C.J.S. Public Administrative Law and Procedure
67 as follows: *Page 4 
 Administrative agencies, particularly under specific statutory authority, may, and should, interpret or construe the statutes which they are called on to administer or enforce, and they may develop guidelines in aid of such interpretation. The question of statutory interpretation, or the defining of a particular statutory term, is a function that should, in the first instance, be left to the appropriate administrative body. Administrative interpretations, although not to be given the force of statutory authority or law, are entitled to consideration and weight, particularly where they involve a contemporaneous construction. They are persuasive as an expression of the view of those experienced in the administration of the statute. Moreover, administrative interpretations may be entitled to great weight, particularly where they have been long-continued, or where they have been acquiesced in by the legislature for a long period of time. Under such conditions, administrative interpretations should not be overturned except for cogent or weighty reasons, and, ordinarily, they will be held controlling and followed unless they are clearly wrong, unreasonable, or unauthorized. [Footnotes omitted.]
 See also Morris v. Torch Club, 278 Ark. 285, 645 S.W.2d 938 (1983).
In my opinion, the action of the Commission in this instance accords with the statutory law discussed above and should be afforded substantial deference.
Question 2: If an election commission did allow early votingto take place outside the district, would this have caused theelection to be void?
In my opinion, the answer to this question is "no," so long as voters in the district are not obliged to leave the district in order to cast their votes. Stated differently, I believe it would be impermissible for an election commission to require that all early voting occur outside of the district, but I further believe that legitimate votes cast outside of the district in accordance with a commission procedure that may be mistaken should nevertheless be counted.
Implicit in my response to your previous question is a conclusion that the legislature, presumably for reasons of voter convenience, determined that school *Page 5 
district elections should occur in the affected district. However, I do not believe that if an election commission were erroneously to allow early voting outside of the district, this error would render the election void. As one of my predecessors noted with respect to this question:
 [T]he law does not contemplate a voter being permitted to cast a ballot at the wrong polling place. He would, instead, presumably be sent to the correct location. If this nevertheless occurs for some reason, it is my opinion that the election commission must, similar to its duty under A.C.A. § 7-5-306 . . . count all votes cast by the voter if he is registered to vote in the county. As noted above, if a person has registered at least thirty days before the election, he is qualified to vote. . . .[2] He does not lose this right to vote, for purposes of the election commission's review under § 7-5-312, by voting at the wrong polling site. He obviously will be voting in the wrong precinct if he is at the wrong polling location, since the polling site is fixed for the precinct. See A.C.A. § 7-5-101 (Repl. 2000). But the voting precinct is irrelevant, in my opinion, for purposes of the election commission's ministerial function . . . in determining a person's right to vote at the election. See Meyers v. Jackson, 390 F.Supp. 37 (E.D. Ark. 1975) (holding the precinct durational residency requirement unconstitutional); see also generally State v. Craighead County Bd. Of Election Comm'rs, 300 Ark. 405, 410, 779 S.W.2d 169 (1989) (a county board of election commissioners is a "ministerial entity").[3]
Section 7-5-418 of the Code sets forth detailed requirements for establishing that a particular voter is indeed qualified to vote in a particular election, and I believe the vote of a qualified voter should be counted irrespective of where it was cast in a manner approved by the election commission. The only circumstance in which I believe an election might be subject to legal challenge is if an election commission were to dictate that the only polling site be located outside of the district, thereby potentially disenfranchising qualified voters — and even then, quite likely, only if the selection of the polling site were deemed by a court to be fraudulent. As the supreme court has noted: *Page 6 
 "The failure to comply with the letter of the law of election officers, especially in matters over which the voter has no control, and in which no fraud is perpetrated, does not as a general rule render an election void, unless the statute expressly makes it so. Allen v. Ranklin, 269 Ark. 517, 521, 602 S.W.2d 673, 675 (1980) (quoting Goggin v. Ratchford, 217 Ark. 180, 229 S.W.2d 130 (1950))."[4]
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] In support of this conclusion, I should note that A.C.A. § 7-11-301 (Supp. 2009) directs that in the absence of any contrary statutory provision, special elections should be conducted in accordance with the general election laws of the state. Nothing in the subchapter dealing with special elections contravenes the directive in A.C.A. § 6-14-106 that the polling place for a school district election be located within the district. In this regard, I should further note that the Code expressly requires that the polling sites for each school election be the same as those established for the immediately preceding election unless otherwise indicated by the county board of election commissioners. A.C.A. § 6-14-106(a)(4)(A). This would suggest that the polling sites in special elections, as in the preceding annual election, would be located within the district.
[2] A person is qualified to vote if he has registered at least thirty days immediately prior to the election. A.C.A. § 7-5-201 (Repl. 2007).
[3] Op. Att'y Gen. No. 2002-301.
[4] Alexander v. Davis,346 Ark. 310, 316, 58 S.W.3d 340 (2001) (quoting with approvalHenard v. St. Francis Election Commission,301 Ark. 459, 783 S.W.2d 598 (1996)). See Op. Att'y Gen. No. 2005-204 (discussing the application of this principle).See also Lewelling v. Mansfield School Dist.,240 Ark. 237, 244, 398 S.W.2d 665 (1966) (stating that "[i]n order to destroy the result of an election it must be shown that wrongs against the freedom of election have prevailed, not slightly and in individual cases, but generally and to the extent to rendering the result doubtful.") *Page 1